## NEW DUNDERBERG MIN. CO. v. OLD et al.

(Circuit Court of Appeals, Eighth Circuit. March 22, 1897.)

No. 838.

1. LAND DEPARTMENT OF THE UNITED STATES—JUDICIAL POWER.
    The land department of the United States (including in that term the secretary of the interior, the commissioner of the general land office, and their subordinates) is a quasi judicial tribunal, whose judgments upon questions within its jurisdiction are impregnable to collateral attack.

2. PATENT TO LAND—LEGAL EFFECT.
    A patent to land or mineral lodes within the jurisdiction of the land department conveys the legal title to the property, and constitutes a judgment of that tribunal upon the questions involved in its issue.

3. JURISDICTION.
    The test of jurisdiction is whether or not the tribunal has power to enter upon the inquiry, not whether its conclusion in the course of it is right or wrong.

4. PATENT TO MINING CLAIM—ACT MAY 10, 1872.
    A patent issued in accordance with the provisions of the act of May 10, 1872 (17 Stat. 91, 94, c. 152, §§ 3, 9; Rev. St. §§ 2322, 2328), to a mining claim located before the passage of that act, under the act of July 26, 1866 (14 Stat. 251, c. 262), conveys the legal title to every vein or lode whose apex is within the exterior boundaries of the mining claim extended downward vertically, and is not subject to collateral attack in an action at law, either on the ground that there was a claim adverse to that patented when the act of May 10, 1872, was passed, or on the ground that adverse rights were affected by its issue.

5. LOCATION AND ENTRY OF MINING CLAIM—EFFECT.
    One who locates and procures a patent to a mining claim under the act of May 10, 1872 (17 Stat. 91, 94, c. 152, §§ 3, 9; Rev. St. §§ 2322, 2328), thereby renounces and abandons all rights and privileges which do not pertain to his specific location under the provisions of that act.

6. LOCATION AND ENTRY OF MINING CLAIM, UNDER ACT MAY 10, 1872—THEIR EFFECT UPON RIGHTS PREVIOUSLY ACQUIRED UNDER ACT JULY 26, 1866.
    A claimant, who discovered and located a lode mining claim under the act of July 26, 1866 (14 Stat. 251, c. 262), renounces and abandons all right to follow his lode or vein on the course of its strike beyond the exterior lines of his patented claim extended downward vertically, when he locates it upon the surface of the ground, enters it, and accepts a patent for it under the act of May 10, 1872 (17 Stat. 91, 94, c. 152, §§ 3, 9).

7. MINING CLAIM—LIMIT OF RIGHT TO FOLLOW LODE BEYOND SIDE LINES.
    When the course of the strike of a lode or vein, on which a patented mining claim is based, crosses both side lines thereof, the side lines become end lines, and the owner has no right to the possession of the lode without those lines.

8. PATENT—STRANGER MAY NOT ATTACK.
    One who is not in privity with the United States, and who did not acquire any right to be preferred in the acquisition of a mineral lode or claim before the same was patented to another, and whose grantor was never

in such privity, and never acquired any such right, cannot successfully attack such patent, either at law or in equity.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Colorado.

On July 12, 1894, Robert O. Old and Ellen Old, the defendants in error, brought this action against the New Dunderberg Mining Company, a corporation, the plaintiff in error, to recover the possession of the Frostberg lode mining claim, survey lot No. 111, which was 1,400 feet in length and 50 feet in width, and of all the lodes and veins of mineral the tops or apexes of which lay within the exterior boundary lines of that claim. They alleged that they were the owners and entitled to the possession of the demanded premises, and that the plaintiff in error had wrongfully entered upon a lode or vein whose apex lay within the exterior boundaries of their claim, and withheld it from them. The Dunderberg Company answered. It denied that the defendants in error had any title or right to the possession of the Frostberg lode claim. It admitted that it was, and had been for some years, in possession of, and had been removing ore from, a vein, whose apex was within the boundaries of the Frostberg claim; but it alleged that on May 29, 1879, the defendant in error Robert O. Old sold and caused this claim to be delivered to one Brown as a part of the Dunderberg lode, which had been discovered, located, and patented by him in the name of another, for his own benefit; that he then gave Brown and his grantee a license to work this vein; that he represented to Brown that this lode, which the plaintiff in error subsequently followed within the boundaries of the Frostberg claim, was a part of the Dunderberg lode, and that he was conveying this part of the lode by the deeds which he delivered to Brown; that he delivered the possession of the part of the lode within the Frostberg claim to Brown at the same time that he delivered the deeds; and that he induced Brown to pay him $107,000 for the deeds he received, by means of these representations and this license. The Dunderberg Company alleged, in effect, that the plaintiffs in error were estopped by these representations and this license from claiming the premises in controversy as against Brown, and that, through mesne conveyances, it had succeeded to all Brown's rights and title. The defendants in error replied to this answer that Robert O. Old never made the representations alleged; that he never delivered to Brown, or represented that he delivered to him, the possession of any vein whose apex lay within the exterior boundaries of the Frostberg claim, and never gave him any license to work any vein there, but that in 1879, and ever since, the defendants in error, and those under whom they hold, were in the open and notorious possession of the Frostberg claim, and of all the lodes and veins whose apexes were within its boundaries.

At the trial, the defendants in error introduced in evidence, over the objection of the Dunderberg Company, a patent to the Frostberg mining claim, and to all the veins and lodes of mineral whose apexes lay within its exterior boundaries, issued under the act of congress approved May 10, 1872 (17 Stat. 91, 94, c. 152, §§ 3, 9: Rev. St. §§ 2322, 2328), and traced their title from the patentees to themselves. This patent was founded on a location made in August, 1866, and upon an entry made on February 27, 1872. The plaintiff in error deraigned its title from the patentee of the Dunderberg mining claim, which was 3,000 feet long and 50 feet wide, and was patented on September 16, 1873, under the act of May 10, 1872. This patent was based on a location made on November 15, 1867, and on an entry made on November 20, 1872. The claims were in the form of a parallelogram. The Frostberg claim extended in an easterly and westerly direction from its discovery shaft. The Dunderberg claim extended in a northerly and southerly direction from its discovery shaft, and the two claims crossed each other almost at right angles near the west end of the Frostberg claim. The discovery shaft of the Dunderberg claim was some 500 feet south of the south line of the Frostberg. The Dunderberg lode or vein lay diagonally across the Dunderberg claim. It crossed each of the side lines of that claim on its strike, and left the claim on its east side at least 300 feet south of the south line of the Frostberg.

From that point it extended northeasterly on its course across the intervening tract between the two claims, and entered the Frostberg claim on its strike at least 300 feet east of the point where the east line of the Dunderberg claim intersected the south line of the Frostberg. Within a few feet of the point where the Dunderberg lode crossed the south line of the Frostberg claim, there was at the time of the sale to Brown in 1879 a shaft and crosscut, called the "Tyler Shaft," and "Tyler Crosscut." The premises in controversy lay within the boundaries of the Frostberg claim, and northeasterly of this shaft. Both Old and Brown knew at the time of the sale that the Dunderberg lode passed out of the Dunderberg claim across its easterly side line, in the manner we have described, and Old had entered and patented between the years 1877 and 1881 the Subtreasury and Silver Chain mining claims, which covered the surface of the ground between the east line of the Dunderberg claim and the south line of the Frostberg claim, under which the Dunderberg lode lay. Old sold these two claims to Brown at the same time that he sold the Dunderberg claim, and caused them to be conveyed to him. The plaintiff in error succeeded to Brown's rights to these claims. Under this state of the facts, counsel for the plaintiff in error requested the court to hold that since both the Frostberg and Dunderberg claims were located, and the former was entered under the act of congress approved July 26, 1866 (14 Stat. 251, c. 262, which gave to the discoverer the right to the lode or vein which he found, and to that only), the defendants in error could not recover, unless they proved that the lode in the possession of the Dunderberg Company within the boundaries of the Frostberg claim was the same lode which was originally discovered and located within the Frostberg claim. The court refused to make this ruling, and instructed the jury that the patent to the Frostberg claim entitled the defendants in error to every vein or lode whose apex lay within its exterior boundaries, whether that lode or vein was the one originally discovered or located within them or not. This ruling is the chief error assigned. There was conflicting testimony relative to the alleged license and estoppel, and some of the rulings of the court upon the admission of evidence in rebuttal upon that question are assigned as error. There was a verdict and a judgment for the defendants in error.

Willard Teller (Harper M. Orahood and E. B. Morgan with him on the brief), for plaintiff in error.

Edwin H. Park and Jacob Fillius, for defendants in error.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The patent under which the defendants in error hold grants all the lodes or veins of ore the apexes of which are within the exterior boundaries of the Frostberg mining claim which it conveys; and the apex of the lode or vein in issue, at the place here in controversy, is within those boundaries. The patent to the Dunderberg claim, under which the plaintiff in error claims the title to the demanded premises, is couched in the same terms; but the apex of the vein in controversy, at the place in dispute, is not within the exterior boundaries of that claim. Upon the face of the patents, therefore, the charge of the court below, that the defendants in error held the title to the property, was right.

But both these claims were located under "An act granting the right of way to ditch and canal owners over the public lands, and for other purposes," approved July 26, 1866 (14 Stat. 251, c. 262). That act gave the lawful claimant who complied with the provisions of the statute the right to the single lode or vein which he

found, and to no other. It is insisted that under the local laws of Colorado, to which this act of congress referred, the claimant was not required to mark the boundaries of his claim upon the surface of the ground when he located it, but was permitted to hold and follow the lode for a distance of 1,400 feet in any direction in which it lay from his discovery shaft, on condition that he should mark his claim at the point of discovery by a substantial stake, post, or stone monument, having inscribed thereon the name of the discoverer and the name of the lode or vein. 14 Stat. 251, §§ 1, 2; Laws Colo. 1866, p. 72, §§ 1, 2; 2 Mills' Ann. St. Colo. 1891, § 3142. There was evidence at the trial that the lode in the possession of the plaintiff in error, within the boundaries of the Frostberg claim, was the same lode which was originally discovered and located in the Dunderberg claim in 1867. The act of congress of May 10, 1872 (17 Stat. 91, 94, c. 152, §§ 3, 9; Rev. St. §§ 2322, 2328), under which the patents to both claims were issued, provided "that the locators of all mining locations heretofore made, * * * where no adverse claim exists at the passage of this act, * * * shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically" (section 3); that sections 1, 2, 3, 4, and 6 of the act of July 26, 1866, be repealed, but that such repeal should not affect existing rights; that applications for patents for mining claims then pending should be prosecuted to a final decision in the general land office; and that, where adverse rights were not affected thereby, patents should issue in pursuance of the act of May 10, 1872. The contention of the counsel for the plaintiff in error is that the grant in the Frostberg patent of every vein whose apex lies within its exterior boundaries was void, except as to the original Frostberg vein discovered therein, because that claim was located under the act of 1866, which allowed the discoverer but a single lode or vein; and the location of the Dunderberg vein in 1867 constituted a claim adverse to the Frostberg, when the act of 1872 was passed, and in that way deprived the officers of the land department of all power to make a grant to the owner of the Frostberg of any other vein than that which he originally discovered. If this proposition is sound, the plaintiff in error was entitled to the vein on the premises in dispute, if it was in fact the original Dunderberg vein, and was not the original Frostberg vein, and the court should have submitted this question to the jury. It refused to do so, and the correctness of this ruling is the most important question in this case.

If it be conceded, however, that there was an adverse claim to the property described in the Frostberg patent, when the act of May 10, 1872, was passed, that fact could not render void any part of the grant made by that patent. Congress did not remit the determination of the questions whether or not there was an adverse claim to the Frostberg, or whether the patent to it under the act of 1872 would affect adverse rights, to the courts of law or of equity, in the first instance. On the other hand, it vested the officers of

the land department with the judicial power, and imposed upon them the duty to decide these questions, and to issue the patent to the Frostberg mining claim in accordance with the decision which they should render.   It is true that a patent issued by the land department of the United States to land over which that department has no power of disposition, and no jurisdiction to determine the claims of applicants for, under the acts of congress, is absolutely void, and conveys no title whatever.   Land the title to which has passed from the government of the United States to another before the claim on which the patent was based was initiated, land reserved from sale and disposition for military and other like purposes, land reserved by a claim under a Mexican or Spanish grant -sub judice, and land for the disposition of which acts of congress had made no provision, is of this character.   U. S. v. Winona & St. P. R. Co., 32 U. S. App. 272, 15 C. C. A. 96, 67 Fed. 948; Polk v. Wendall, 9 Cranch, 87; Stoddard v. Chambers, 2 How. 284, 318; Easton v. Salisbury, 21 How. 426, 432; Reichart v. Felps, 6 Wall. 160; Best v. Polk, 18 Wall. 112, 117, 118; Sherman v. Buick, 93 U. S. 209; Iron Co. v. Cunningham, 15 Sup. Ct. 103; Doolan v. Carr, 125 U. S. 618, 624, 8 Sup. Ct. 1228; Wright v. Roseberry, 121 U. S. 488, 519, 7 Sup. Ct. 985; Davis' Adm'r v. Weibbold, 139 U. S. 507, 528, 11 Sup. Ct. 628; Deffeback v. Hawke, 115 U. S. 392, 406, 6 Sup. Ct. 95.   But the Frostberg claim was not of this character. Jurisdiction of the subject-matter is the power to deal with the general abstract question.   The test of jurisdiction is whether or not the tribunal has power to enter upon the inquiry, not whether its conclusion in the course of it is right or wrong.   Foltz v. Railway Co., 19 U. S. App. 576, 8 C. C. A. 635, and 60 Fed. 316.

The act of July 26, 1866, provided that any claimant of a lode or vein might file a diagram of the same, so extended laterally or otherwise as to conform to the local laws, customs, and rules of miners, and might enter such tract, and receive a patent therefor, with a right to the vein or lode; that upon the filing of this diagram and the posting of the same and of a notice of intention to apply for a patent, the register of the local land office should post and publish the notice for 90 days; that, if no adverse claim had then been filed, the surveyor general should, on the application of the party, survey the premises, make a plat thereof, designate the number and description of the location and the improvements and character of the vein, and indorse his approval thereon; and that, upon the filing of this plat and of proof that the diagram and notice had been duly posted, the register should transmit the plat, survey and description to the general land office, and the applicant should receive a patent for the lode and land claimed.   14 Stat. 251, 252, c. 262, §§ 2, 3.   The claimant of the Frostberg lode had done all this before the act of 1872 was passed.   He had designated the boundaries of his claim.   It had been surveyed and marked on the ground.   His notice of intention to apply for a patent for it had been given.   No adverse claim had been filed in the land office, and on February 27, 1872, he had entered it for patent.   When the act of 1872 was passed, he was already entitled to the Frostberg

lode, and to the surface described in his claim under the act of 1866. Section 3 of the act of May 10, 1872 (17 Stat. 91, c. 152), provided that all locators of mining locations theretofore or thereafter made, where no adverse claim existed at the time of the passage of that act, should have the exclusive right to all veins or lodes whose apexes were within their surface boundaries. Section 9 of that act provided that sections 1, 2, 3, 4, and 6 of the act of July 26, 1866 (14 Stat. 251, c. 262), were repealed; that such repeal should not affect existing rights; and that "applications for patents for mining claims now pending may be prosecuted to a final decision in the general land office, but, in such cases where adverse rights are not affected thereby, patents may issue in pursuance of the provisions of this act." These provisions of the acts of congress leave no doubt that the land department had jurisdiction to hear and determine the claims of applicants for and to dispose of this mining claim, and every vein or lode whose apex lay inside of its surface lines extended downward vertically. When the act of May 10, 1872, was passed, the Frostberg claim had been located, and the application for the patent to it was pending. That act, by its very terms, imposed upon the officers of the land department the duty of hearing the evidence upon, and deciding, the questions whether or not any claim adverse to that location existed at the time of its passage, and whether or not any adverse rights would be affected by issuing the patent according to the provisions of the act of 1872. These questions were necessarily determined by the officers of that department before they issued this patent. The patent which the department issued in 1876 was a judgment of that tribunal that no such claim did exist on May 10, 1872, and that no adverse rights would be affected by issuing it in accordance with the provisions of the act of that date. It is at the same time a judicial determination of these questions, and a conveyance of the legal title to every lode or vein whose apex lay within the surface boundaries of the patented claim extended downward vertically.

If this action of the land department resulted from fraud, mistake, or erroneous views of the law, a court of equity might set aside the patent, or declare it to be held in trust for him who had a better right to it. Bogan v. Mortgage Co., 27 U. S. App. 346, 11 C. C. A. 128, and 63 Fed. 192; U. S. v. Winona & St. P. R. Co., 32 U. S. App. 272, 15 C. C. A. 96, 107, and 67 Fed. 948, and cases cited. But in this action at law it is, like the judgments of other special tribunals vested with judicial power, impervious to collateral attack. In the case of Steel v. Refining Co., 106 U. S. 447, 451, 1 Sup. Ct. 389, which was an action of ejectment in which the plaintiffs' title depended on a patent issued upon a claim for mineral lands within the limits of a town site, and the defense was that the patent was void, because the land was not mineral, and the patentee was not a citizen, and had not declared his intention to become such, the supreme court held that proof of these facts was inadmissible to attack the patent, and declared that the land department necessarily "must consider and pass upon the qualifications of the applicant, the acts he has performed to secure the title, the nature of the

land, and whether it is of the class that is open to sale. Its judgment in these matters is that of a special tribunal, and is unassailable, except by direct proceedings for its annulment or limitation." To the same effect are Heath v. Wallace, 138 U. S. 573, 575, 11 Sup. Ct. 380; Barden v. Railroad Co., 154 U. S. 288, 14 Sup. Ct. 1030; and Davis' Adm'r v. Weibbold, 139 U. S. 507, 524, 11 Sup. Ct. 628. In French v. Fyan, 93 U. S. 169, 172, the supreme court held that parol evidence was inadmissible to show that land patented to the state of Missouri as swamp and overflowed land was not in fact swamp or overflowed land, and that on that account the patent was void. In Ehrhardt v. Hogaboom, 115 U. S. 67, 69, 5 Sup. Ct. 1157, that court held, on the other hand, that parol evidence was inadmissible to show that land patented to a pre-emptor was swamp or overflowed land, and was therefore included in the grant to the state of California, and that the patent to the pre-emptor was void on that account. A patent to land or mineral lodes, over which the land department of the United States has the power of disposition, and the jurisdiction to determine the claims of applicants for, under the acts of congress, is impregnable to collateral attack. whether the decision of the department on which it is based was right or wrong, and the patent conveys the legal title to the property to the patentee. U. S. v. Winona & St. P. R. Co., supra; Minter v. Crommelin, 18 How. 87, 89; U. S. v. Schurz, 102 U. S. 378, 401: French v. Fyan, 93 U. S. 169, 172; Quinby v. Conlan, 104 U. S. 420; Smelting Co. v. Kemp, 104 U. S. 636, 645–647; Steel v. Refining Co., 106 U. S. 447, 450, 452, 1 Sup. Ct. 389; Heath v. Wallace, 138 U. S. 573, 585, 11 Sup. Ct. 380; Knight v. Association, 142 U. S. 161, 212, 12 Sup. Ct. 258; Noble v. Railroad Co., 147 U. S. 174, 13 Sup. Ct. 271; Barden v. Railroad Co., 154 U. S. 288, 14 Sup. Ct. 1030. If a more careful analysis of the authorities upon and a more exhaustive consideration of these questions are sought, they will be found in U. S. v. Winona & St. P. R. Co., 32 U. S. App. 272, 15 C. C. A. 96, and 67 Fed. 948, which was decided by this court in 1895.

Our conclusion is that a patent issued under and in accordance with the provisions of the act of May 10, 1872 (17 Stat. 91, c. 152; Rev. St. §§ 2322, 2328), to a mining claim located before the passage of that act, conveys the legal title to every vein or lode of mineral whose apex is within its surface lines extended downward vertically, and is not subject to collateral attack in an action at law, either on the ground that there was a claim adverse to that patent when the act of 1872 was passed, or on the ground that adverse rights were affected by its issue under the provisions of that act.

Moreover, neither the plaintiff in error nor its immediate or remote grantor was ever in a position to attack the Frostberg patent, either at law or in equity, at any time after the patent to the Dunderberg claim was issued, on September 16, 1873. Conceding, but not deciding, that the locator of the Dunderberg claim, in 1867, then had the right, under the act of 1866, to follow the Dunderberg lode in any direction from his discovery shaft in which it lay, he renounced that right when he availed himself of the benefits of the act of 1872, and accepted his patent under that statute. That act provided that he

might obtain a patent according to its terms, or that he might retain the rights he had acquired under the act of 1866. He could not obtain a patent, however, under either act, until he located the boundaries of his claim upon the surface of the ground, and limited his claim by those boundaries. We have already seen that the act of 1866 required such a location before a patent could issue. The act of 1872 required the applicant for a patent to file his application with a plat or field notes of the claim made by the surveyor general, showing accurately the boundaries of his claim. It required him to post a copy of the plat and of the notice of his application for a patent on the land claimed, and it required him to file a copy of this notice and proof of the posting in the local land office. The register of that office was then required to post and publish notice of the application for 60 days, and thereupon a patent issued, if no adverse claim was filed. 17 Stat. 91, 92, c. 152, § 6; Rev. St. § 2325. That act provided that the patentee under it should have the right to all lodes and veins whose apexes were within the surface boundaries of his claim. The patentee of the Dunderberg lode located his claim, and accepted a patent for it, under the terms of this act. He located it upon a tract of land which included his discovery shaft, and was 3,000 feet long from north to south, and 70 feet wide from east to west. It may be that he could have held the Dunderberg lode within the surface boundaries of the Frostberg claim if he had so located his claim upon the surface of the ground that the apex of the Dunderberg lode within the Frostberg claim would have been within the exterior boundaries of the Dunderberg claim upon the surface. But he did not do so. He chose to so locate it that his lode crossed both the side lines of his claim diagonally on its strike and passed out of the claim more than 300 feet before it enters the Frostberg claim. The claim of his grantee now is that it can renounce this location and the limitations of the law and the patent upon which it is based, and follow the lode wherever it leads, as the discoverer might have done when he first found it, and before he located his claim to the surface at all. It bases this claim upon the provision of section 9 of the act of May 10, 1872 (17 Stat. 91, c. 152), that the repeal of sections 1, 2, 3, 4, and 6 of the act of July 26, 1866 (chapter 262, 14 Stat. 251), shall not affect existing rights. But it was not the repeal of these sections of the act of 1866 that affected the rights of the owner of the Dunderberg lode. That repeal did not deprive him of any right he had to follow his lode into the Frostberg claim. It was his location, entry, and patent of his claim, from which the lode departed on its strike 300 feet before it reached the Frostberg, that affected his rights. The act of 1872 required the applicant for a patent to locate his claim on the surface of the ground as a condition precedent to its issue, and it declared what rights he should acquire thereby, for the express purpose of defining, fixing, and limiting his claims and his rights. Under that act, the location of a mining claim on the surface of the ground, and its entry for patent, is a notice to the government and the public that the owner claims all the exclusive rights and privileges granted by the act; but it is no less a notice, and a legal notice, that he renounces and aban-

dons to the government all other rights and privileges pertaining to his discovery of the lode for which he asks the patent. It would work manifest injustice to permit one who has located, and excluded all others from a claim of the full size allowed by the acts of congress, and from all veins whose apexes lay within its surface, to follow the lode upon the discovery of which that claim was based at right angles to his location, and without its side lines, for a distance equal to the length of his claim. In our opinion, the acts of 1866 and 1872 confer no such privilege. A claimant who discovered and located a lode mining claim under the act of 1866 renounces and abandons all rights and privileges to follow his lode on its course beyond the exterior lines of his patented claim, when he locates it upon the surface of the ground, enters it, and accepts a patent for it under the act of May 10, 1872.

Since the side lines of the Dunderberg claim crossed the course of the strike of the vein, they constitute end lines; and, under the patent to it, the owner of that claim was without right to the possession of that lode outside of those lines, after he obtained his patent, in 1873. Mining Co. v. Tarbet, 98 U. S. 463; Iron Silver-Mining Co. v. Elgin Mining & Smelting Co., 118 U. S. 196, 207, 6 Sup. Ct. 1177; King v. Mining Co., 152 U. S. 222, 228, 14 Sup. Ct. 510. The owner of the Dunderberg claim, therefore, had no right or interest in any lode or vein in the demanded premises at any time after 1873, and the plaintiff in error acquired no such right or interest from him. It acquired none by its deeds of the Subtreasury or Silver Chain mining claims, because those claims were not initiated until after the Frostberg claim was located and patented. All its claims, therefore, are under grantors, immediate and remote, not one of whom was in privity with the United States, or had acquired any right to the property in controversy when it was patented to the grantors of the defendants in error in 1876. This fact is fatal to its claim to avoid the patent to the Frostberg claim, in equity as well as at law. One who was not in privity with the United States, and who had acquired no right to the land or lode when it was patented to another, cannot successfully attack such a patent, either at law or in equity. Deweese v. Reinhard, 19 U. S. App. 698, 706, 10 C. C. A. 55, 59, 60, and 61 Fed. 777, 781; Hartman v. Warren, 40 U. S. App. 245, 22 C. C. A. 30, and 76 Fed. 157, 163.

It is assigned as error that the court admitted in evidence testimony given, and leases made by the defendants in error and their grantors in 1882, 1884, and 1888, which tended to show that they were in possession and exercising acts of ownership over the demanded premises subsequent to the sale of the Dunderberg, Subtreasury, and Silver Chain claims by Old, in 1879; and that it also admitted in evidence two letters from the defendant in error Robert O. Old, one to B. C. Catron, superintendent, and the other to C. A. Cameron, secretary, of the Dunderberg Company, which were written in 1883, and in which Old asked permission to use the Tyler crosscut and shaft to enable him to lease a part of the Frostberg lode, commencing at or near the line between that lode and the property of the Dunderberg Company, and running easterly 250 feet, together with

the answer of Catron that he might use the crosscut, but could not use the shaft, and the answer of Cameron that he had referred the matter to Catron and the trustees of his company. But this evidence was introduced to rebut the plea and proof of license and estoppel which the plaintiff in error had made. The Dunderberg Company had answered that it entered within the boundaries of the Frostberg claim by the express license and assent of the defendant in error Robert O. Old; that when he sold the Dunderberg, Subtreasury, and Silver Chain mining claims to its grantor, Brown, he had represented to him that he thereby sold and caused to be conveyed to him, and that he thereby delivered, all the ore in the Dunderberg lode, whether within the side lines of the Frostberg claim or not, and that the Dunderberg Company had followed and worked the Dunderberg vein for 300 or 400 feet within the lines of the Frostberg claim, and had been in notorious and uninterrupted possession of the Dunderberg vein, both within and without the lines of the Frostberg claim, from May 29, 1879, until the commencement of the action, with the full knowledge and assent of the defendants in error. These allegations had been denied. The Dunderberg Company had introduced evidence which tended to sustain them,—notably the testimony of Mr. Catron, its superintendent, that a lessee of Old, who held a lease of 200 feet within the Frostberg lines on May 29, 1874, surrendered it, and said that he took it of Old on condition that he should deliver possession to Brown if the sale of that date was consummated; the testimony of the same witness that in 1882 he stopped the shipment of some ore which had been taken from the Frostberg claim by miners who claimed to have a lease upon it from Old, that he notified Old of this fact, and the latter denied that he had given them any lease, and said that that was not his ground; and the testimony of Brown that, when he purchased, Old took him down into the Tyler crosscut, and delivered to him the possession of a drift, where men were working, which extended into the Frostberg claim a distance of from 40 to 60 feet. In fact, the plaintiff in error tendered the issue of its exclusive possession of the ore in the Dunderberg vein within the Frostberg claim, from 1879 until the action was commenced, with the assent of the defendants in error, and it introduced evidence to sustain its side of that issue. It could not have been irrelevant to this issue for the defendants in error to prove that during this period they were in possession of the premises; that they leased them to miners, who removed the ore; and that they notified the plaintiff in error that they were doing so, and obtained permission to use its crosscut for that purpose. That appears to have been the only effect of the evidence that is here challenged, and, in our opinion, it was not incompetent to rebut the testimony which the plaintiff in error had introduced in support of the issue of license, estoppel, and possession which it had tendered. The judgment below must be affirmed, with costs; and it is so ordered.