[No. 3123. Decided December 5, 1898.]

J. M. MOORE, *Appellant,* v. JOHN CORMODE, *Respondent.*

PUBLIC LANDS—GRANT TO NORTHERN PACIFIC RAILROAD—INDEMNITY LANDS—OPERATION OF GRANT—RIGHT OF ENTRY.

Under the land grant to the Northern Pacific Railroad Company (13 Stat. at Large, 365) of alternate sections for forty miles on each side of the line as located, and, in case of prior selection by settlers, granting the company the right to select in lieu thereof alternate sections from indemnity lands lying not more than ten miles beyond the original grant of place lands, the grant as to lands in the indemnity limits did not take effect until actually selected by the company, and prior thereto such lands were open to settlement.

Under the land grant to the Northern Pacific Railroad Company giving it the right to select lands within certain indemnity limits in case lands within the place limits granted the company have been lost by prior settlement, there must be a finding by the United States land department of a deficiency of the grant within the place limits in order to give the company any standing in a contest between it and settlers over lands lying within the indemnity limits.

20—20 WASH.

Appeal from Superior Court, Garfield County.—Hon. THOMAS H. BRENTS, Judge. Affirmed.

*James B. Kerr,* and *Stephens & Bunn,* for appellant:

The land in controversy was withdrawn from sale, homestead, pre-emption or other entry by the terms of the act of congress of July 2, 1864, granting lands to the Northern Pacific Railroad Company, and remained so withdrawn from and after the date of filing the map of general route, to-wit, February 21, 1872. *Buttz v. Northern Pacific R. R. Co.,* 119 U. S. 55 (30 L. ed. 330); *St. Paul & P. R. R. Co. v. Northern Pacific R. R. Co.,* 139 U. S. 1 (35 L. ed. 77); *Southern Pacific R. R. Co. v. Groeck,* 87 Fed. 970.

In addition to the statutory withdrawal, the withdrawal orders of the land department segregated the premises from the public domain, and thereafter they were not subject to sale, homestead, pre-emption or other entry. Therefore, no right could be acquired or initiated by respondent. Hence, the land was free and clear of any right or claim at the date of selection by the Northern Pacific Railroad Company. *Northern Pacific R. R. Co. v. Musser-Sauntry Land Co.,* 168 U. S. 604 (42 L. ed. 596); *Wood v. Beach,* 156 U. S. 548 (39 L. ed. 528); *Hamblin v. Western Land Co.,* 147 U. S. 531 (37 L. ed. 267); *United States v. Des Moines, etc., Co.,* 142 U. S. 510 (35 L. ed. 1099); *Bullard v. Des Moines, etc., Co.,* 122 U. S. 167 (30 L. ed. 1123); *Riley v. Welles,* 154 U. S. 578; *Burfenning v. Chicago, etc., Co.,* 163 U. S. 321 (41 L. ed. 175); *Menotti v. Dillon,* 167 U. S. 703 (42 L. ed. 333); *Thompson v. St. Paul, M. & M. Ry. Co.,* 83 Fed. 546; *Southern Pacific R. R. Co. v. Araiza,* 57 Fed. 98; *Hewitt v. Schultz,* 76 N. W. 230.

The occupation, cultivation and intention of respondent, or any other person, without entry or application to enter, conferred no right or claim whatever. *Northern Pacific*

*R. R. Co. v. Colburn,* 164 U. S. 383 (41 L. ed. 479);
*Kitteringham v. Blair Town Lot Co.,* 35 N. W. 502;
*Southern Pacific R. R. Co. v. Pursell,* 18 Pac. 886; *Atchison, etc., R. R. Co. v. Mecklin,* 23 Kan. 174; *Burlington, etc., R. R. Co. v. Abink,* 14 Neb. 97; *McHenry v. Nygaard,* 74 N. W. 1106; *Gonzales v. French,* 164 U. S. 388
(41 L. ed. 458).

The patent issued to respondents is void, and appellants
are not concluded by errors of law committed by the land
department. *Wisconsin Central R. R. Co. v. Forsythe,*
159 U. S. 46 (40 L. ed. 71); *Corporation of Catholic
Bishop of Nesqually v. Gibbon,* 158 U. S. 155 (39 L. ed.
931); *United States v. Carpenter,* 111 U. S. 347 (28 L. ed.
451). If the patent to respondent be not void, it is voidable, and he is the trustee of and for appellant, and he
should be declared a trustee and required to convey the
legal title to him. *St. Paul, etc., R. R. Co. v. Winona &
St. P. R. R. Co.,* 112 U. S. 720 (28 L. ed. 872); *Ard v.
Brandon,* 156 U. S. 537 (39 L. ed. 524); *Johnson v.
Towsley,* 13 Wall. 72 (20 L. ed. 485); *Shepley v. Cowan,*
91 U. S. 330 (23 L. ed. 424); *Moore v. Robbins,* 96 U. S.
530 (24 L. ed. 848).

The indemnity lands were appropriated without selection, by reason of the deficiency in the place limits. *St.
Paul, etc., R. R. Co. v. Winona & St. P. R. R. Co.,* 112
U. S. 720 (28 L. ed. 872); *Southern Pacific R. R. Co. v.
Groeck,* 87 Fed. 970.

The selection was made in conformity to and compliance with the requirements of the secretary of the interior
and under his direction, which is admitted by the demurrer. *O'Brien v. Northern Pacific R. R. Co.,* 22 L. D.
135; *Brown v. Northern Pacific R. R. Co.,* 24 L. D. 370;
*Dillone v. Northern Pacific R. R. Co.,* 16 L. D. 229;
*Hogan v. Northern Pacific R. R. Co.,* 26 L. D. 312;
*Humiston v. Northern Pacific R. R. Co.,* 23 L. D. 545,

*Sage v. Swenson,* 67 N. W. 544. The allegations as to selection and the demand for possession by appellant bring the case within the rule laid down by this court in *Keane v. Brygger,* 3 Wash. 338.

*Gose & Kuykendall,* and *Tweedy & Jewett,* for respondents:

The officers of the land department have exclusive original jurisdiction of all facts supporting titles, when the conveyance of such titles is accomplished through the acts of the land department officers or through the acts of any of them, whether the conveyance be by patent or by approval of railroad selections under grants, and, having exclusive jurisdiction, they find and pass upon all facts to the exclusion of the courts. *Johnson v. Drew,* 18 Sup. Ct. 800 (43 L. ed. 88); *Stewart v. McHarry,* 159 U. S. 643 (40 L. ed. 292); *Harrington v. Wilson,* 74 N. W. 1055; *Durango Land Co. v. Evans,* 80 Fed. 425; *Marquez v. Frisbie,* 101 U. S. 473 (25 L. ed. 800); *Vance v. Burbank,* 101 U. S. 514 (25 L. ed. 929); *Quinby v. Coulan,* 104 U. S. 420 (26 L. ed. 800); *Steel v. Smelting Co.,* 106 U. S. 447 (27 L. ed. 226); *Baldwin v. Starks,* 107 U. S. 463 (27 L. ed. 526); *Bohall v. Dilla,* 114 U. S. 47 (29 L. ed. 61); *Lee v. Johnson,* 116 U. S. 48 (29 L. ed. 570); *St. Louis Smelting Co. v. Kemp,* 104 U. S. 636 (26 L. ed. 875); *Gale v. Best,* 12 Am. St. Rep. 44. From these authorities, the conclusion forces itself upon us that the appellant cannot succeed upon his complaints because of the absence of special findings of the officers of the department that there is a deficiency in the place lands, not satisfied by selection, and that the particular lands claimed in the complaint to be lost are in fact lost.

The grant to the Northern Pacific itself prohibits a withdrawal, and the withdrawals, therefore, of the sec-

retary are nullities and void. This prohibition applies
only to lieu lands. *Northern Pacific R. R. Co. v. Miller,*
7 L. D. 10; *Cole v. Northern Pacific R. R. Co.,* 17 L. D.
8; *Northern Pacific R. R.. Co. v. Davis,* 19 L. D. 87;
*Northern Pacific R. R. Co. v. Sanders,* 116 U. S. 620
(41 L. ed. 1143); *Grandin v. La Bar,* 57 N. W. 243. It
is our contention that the sixth section of the grant opens
the odd sections within the indemnity belt to homestead
settlement, when surveyed, as well as to selection, and
that, as the said lands are appropriated to these two pur-
poses, the land department cannot defeat either purpose
by withdrawals. If these lands are thus appropriated,
the case of *Burfenning v. Chicago, etc., Ry. Co.,* 163 U.
S. 323 (41 L. ed. 175) distinctly holds that the appro-
priation cannot be defeated.

No rights vested in the Northern Pacific as to any
specific tract of indemnity land before selection and ap-
proval. *Kansas Pacific R. R. Co. v. Atchison, etc., R.
R. Co.,* 112 U. S. 414 (28 L. ed. 794); *St. Paul, etc.,
R. R. Co. v. Winona, etc., R. R. Co.,* 112 U. S. 720 (28
L. ed. 872); *Wisconsin Central R. R. Co. v. Price
County,* 133 U. S. 496 (33 L. ed. 687); *Reser v. Carney,*
54 N. W. 89; *Grandin v. La Bar,* 57 N. W. 243; *Elling
v. Thexton,* 16 Pac. 931; *Jackson v. La Moure County,*
46 N. W. 449.

The decisions of the department that the withdrawal
in 1880 is void because prohibited; that the grant does
not withdraw the indemnity lands; that occupancy of
an actual *bona fide* settler with improvement and culti-
vation of  the land and possession is sufficient, are so
numerous, and so much of the said real estate on the faith
of them has been sold and purchased by the people that
the law of *stare decisis* applies. As to the reasons for the
rule, see *Smith v. Ferries & C. H. Ry. Co.,* 51 Pac. 714.

The opinion of the court was delivered by

Scott, C. J.—The land in controversy in this case is within the indemnity limits of the grant to the Northern Pacific Railroad Company. In 1882 one Mrs. Standifird, a qualified settler, located upon the land, built a house and made other improvements, and the defendant, Cormode, by mesne conveyances, succeeded to her rights, and now holds under homestead patent. The appellant is the grantee of the railroad company, and brought this action to cancel the patent issued to the respondent and to obtain possession of the land. A demurrer interposed by the respondent was sustained and the appellant, electing to stand upon his complaint, has appealed from the judgment against him. The rights of the respective parties were previously contested in the land department, through its successive stages, and culminated in a decision in favor of the respondent by the secretary of the interior. The land was selected by the company January 5, 1884, at which time it was occupied by a qualified settler, as stated, and the land department affirmatively found that when the selection was made by the company the land was embraced in the *bona fide* settlement of Mrs. Standifird. When the appellant purchased from the company the case was pending before the land department.

Sections 3 and 6 of the act granting lands to aid in the construction of the railroad aforesaid (13 Statutes at Large, p. 365), are the ones bearing especially upon the questions involved. The more material parts of § 3 are as follows:

" That there be, and hereby is, granted . . . every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile, on each side of said railroad line, as said company may adopt . . . and whenever on the line thereof, the United States have full title, not reserved, sold, granted, or otherwise appropriated, and

free from pre-emption, or other claims or rights, at the time the line of said road is definitely fixed, and a plat thereof filed in the office of the commissioner of the general land office; and whenever, prior to said time, any of said sections or parts of sections shall have been granted, sold, reserved, occupied by homestead settlers, or pre-empted, or otherwise disposed of, other lands shall be selected by said company in lieu thereof, under the direction of the secretary of the interior, in alternate sections, and designated by odd numbers, not more than ten miles beyond the limits of said alternate section;"  .  .  .

Section 4 provides for the issuance of patents to the company upon the completion of each twenty-five consecutive miles of road, etc.

" Sec. 6.  And be it further enacted, That the president of the United States shall cause the lands to be surveyed for forty miles in width on both sides of the entire line of said road, after the general route shall be fixed, and as fast as may be required by the construction of said railroad; and the odd sections of land hereby granted shall not be liable to sale, or entry, or pre-emption before or after they are surveyed, except by said company, as provided by this act; but the provisions of the act of September, eighteen hundred and forty-one, granting pre-emption rights, and the acts amendatory thereof, and of the act entitled 'An Act to secure homesteads to actual settlers on the public domain,' approved May twenty, eighteen hundred and sixty-two, shall be, and the same are hereby, extended to all other lands on the line of said road, when surveyed, excepting those hereby granted to said company.  And the reserved alternate sections shall not be sold by the government at a price less than two dollars and fifty cents per acre, when offered for sale."

Section 12 required an acceptance of the terms and conditions of the act by the company within two years after its passage.

Appellant contends that the land in controversy was withdrawn from sale, homestead, pre-emption or other entry by the terms of the act aforesaid, and remained so

from and after the date of filing the map of general route on February 21, 1872, and that, in addition to the statutory withdrawal, the withdrawal orders of the land department segregated the premises from the public domain, and no right thereto could be acquired or initiated by the respondent or any one adverse to the company; so that the land was free and clear of all other rights and claims at the date of the selection by the company. Questions regarding the construction of the act have been before the supreme court of the United States a number of times, but the matters at issue in such cases do not directly cover this case. It would be difficult to reconcile all that has been said in the discussion of the various cases cited, and we shall not undertake to consider them in detail. But, taking a broad view of the question in considering the primary effect of the act as a matter of public policy, which is always permissible where there is room for construction and the true intent is a matter of doubt, we are of the opinion that there was no intention to withdraw from actual settlement the immense quantity of lands embraced within the indemnity limits. This phase of the matter has received consideration in a number of cases. Attention is called to the fact that it was expected when the law was enacted that the road would be speedily constructed, and that it would traverse, in the main, a practically unoccupied territory, and that there would be consequently no great loss of lands within the place limits. It might well have been considered that there would be ample lands within the indemnity limits to make good such losses, although these lands were open to settlement at all times prior to their actual selection. See *Northern Pacific R. R. Co. v. Musser-Sauntry Land, etc., Co.,* 168 U. S. 604 (18 Sup. Ct. 205). And, after a consideration of the numerous cases cited in the briefs, we are of the opinion that the grant did not take effect as to any lands

within the indemnity limits until actually selected by the company, and that prior thereto they were open to settlement. It has been the long continued policy of the government to facilitate the settlement of its unoccupied lands, and so great a restriction as this would have been, under the company's contention, could hardly have been contemplated. The departmental withdrawal was subsequently set aside, and cannot operate to extend the provisions of the act. Those parts of the discussion or statements in some of the cases most relied upon by the appellant are not in harmony with the later expressions of the court, especially in *Northern Pacific R. R. Co. v. Colburn,* 164 U. S. 383 (17 Sup. Ct. 98), and *Northern Pacific R. R. Co. v. Sanders,* 166 U. S. 620 (17 Sup. Ct. 671). Also the prevailing and long continued construction of the act by the land department is entitled to great weight in determining the questions raised. Many patents have been issued thereunder to settlers who are now occupying the lands, as in this case, and doubtless frequent transfers have been made to others, who have regarded the title as perfect; for the issuance of a patent is regarded by the common mind as conclusive, and, if it is a matter of doubt, the overturning of these rights and the construction of the land department should be reserved for the consideration of the highest court in the land.

Furthermore, it is most strenuously insisted by the respondent that the case must be decided in his favor on the ground that it does not appear that there was any finding by the land department that there was any deficiency in place lands, and that under the familiar rule applied to judgments, if an affirmative finding that there was no loss of place limits was necessary, then that such finding would be presumed; that all presumptions are in favor of the regularity of the proceedings in the land department to sustain a patent. The appellant has undertaken to con-

clude this matter by averment in his complaint, and contends that the indemnity lands were appropriated without selection by reason of the deficiency in place limits, and that the court is bound by the allegations of the complaint in this particular.  There is no allegation, however, that there was a finding by the secretary of the interior or in the proceedings before the land department that there was a deficiency in place limits.  And it seems to us that, to enable the company to claim this land, there must have been a finding that there was a deficiency within the place limits for which the lands claimed were taken, or that it was conclusively established in the proceedings before the department.  This matter was a question of fact, essentially within the jurisdiction of the land department, and its judgment should be sustained, unless it appears that it is in conflict with the facts therein found or established. It may have been found that there was no deficiency entitling the company to select these lands.  It was found that, when the selection was made, the land was occupied by a qualified settler, and the company, therefore, not entitled to take it.  The contention of the appellant with reference to the allegations of the complaint in this respect are, in our opinion, overborne by the authorities.  *Johnson v. Drew,* 171 U. S. 93 (18 Sup. Ct. 800); *Durango Land & Coal Co. v. Evans,* 80 Fed. 425; *Gale v. Best,* 78 Cal. 235 (20 Pac. 550, 12 Am. St. Rep. 44); *New Dunderberg Min. Co. v. Old,* 79 Fed. 598.

The judgment of the lower court is affirmed.

REAVIS, DUNBAR, GORDON and ANDERS, JJ., concur.