180 U.S. 173
 21 S.Ct. 319
 45 L.Ed. 479
 WILLIAM L. POWERS, Hattie Dean, Edward Deane, F. S. Bell, Ivan Chase, John K. McCornack, Ann J. Clyde, J. R. Malhern, Spokane & Palouse Railway Company, a Corporation; Spokane & Palouse Land Company, a Corporation; Palouse Mill Company, a Corporation, and A. F. Pugh, Plffs. in Err.,
v.
JACOB SLAGHT.
 No. 47.
 Argued and Submitted October 15, 16, 1900.
 Decided January 7, 1901.
 
 1
 This action was commenced in one of the courts of the state of Washington by the present plaintiffs in error. They alleged in their second amended complaint that on or about December 15th, 1883, the Northern Pacific Railroad Company, under and by virtue of the act of Congress approved July 2d, 1864 (13 Stat. at L. 365, chap. 217), granting lands to aid in the construction of a railroad and telegraph line from Lake Superior to Puget sound on the Pacific Coast, and the various acts and joint resolutions of Congress supplemental thereto and amendatory thereof, applied at the United States district land office in the district in which the lands were situated to select, and selected lots 10, 11, 14, and 15 in section 1, township 16, north of range 45 east, Willamette meridian, Washington, with other lands, as indemnity in lieu of lands within the place limits of the grant to the company, and which had been reserved, sold, granted, or otherwise appropriated, or to which pre-emption or other claims or rights had attached at the date when the line of the company conterminous therewith was definitely fixed by filing a plat thereof in the office of the Commissioner of the General Land Office,—a list of the lands selected, prepared in the manner and form prescribed by the rules and regulations of the Interior Department, being filed by the company in the district land office, and tender and payment made to the receiver thereof of the fees required by law to be paid upon the selection of lands. The list was allowed and approved by the register and receiver on December 17th, 1883, the fees accepted, and thereafter the list was transmitted to the Commissioner of the General Land Office for approval. These lands were selected as public land to which the United States had full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights, except such reservation, appropriation, claim, and rights as had attached thereto in favor of the railroad company.
 
 
 2
 On October 26th, 1887, the railroad company, in compliance with other and additional instructions of the officers of the Interior Department, issued and given after the above selection had, as stated, been accepted, allowed, and approved, filed a list designating the losses in lieu of which the lands described in the selection list were selected; and thereafter, in the years 1892 and 1893, the company, in compliance with instructions issued by the officers of the Interior Department subsequently to the acceptance, allowance, and approval of the selection, rearranged the list of losses and the selection list so that the losses for which each tract of land selected by the company had been taken should be specifically designated. It appeared from the rearranged list that the lands in question were selected in lieu of certain lands included in section 7, township 9, north of range 15 east, Willamette meridian, Washington, which last-described land was located conterminous with and within 40 miles of the line of the company as definitely fixed, and was at the date of the grant to the company, and at the date when its line conterminous therewith was definitely fixed, included in a reservation of land set apart for the Yakima Indians.
 
 
 3
 On or about December 24th, 1885, after the selection of the above-described land, the Northern Pacific Railroad Company entered into a contract in writing with the plaintiff William L. Powers to convey to him lots 3, 6, 11, and 14 in section 1, township 16, north of range 45 east, upon the payment by him to the company of the sum of $822; and on August 4th, 1887, payment having been made, the company conveyed the lots to him.
 
 
 4
 On July 30th, 1887, the company conveyed to Powers lots 2, 7, 10, and 15 in that section.
 
 
 5
 In the year 1877 A. M. Duffield settled upon lots 2, 3, 6, 7, 10, 11, 14, and 15 in the section in question. Shortly thereafter he sold and assigned his possessory rights and improvements to L. M. Rhodes, and thereafter, Rhodes having failed to make payment therefor, the property was assigned to the plaintiff Powers, who settled thereon in 1881 with the expectation and intention of purchasing the lands or a portion thereof from the railroad company. Soon after such settlement Powers offered to purchase lots 2, 7, 10, and 15 from the company, and at the same time John G. Powers, a brother of the plaintiff, offered to purchase lots 3, 6, 11, and 14 from the company. Thereafter, as above stated, the plaintiff William L. Powers purchased the lands from the railroad company, having prior thereto taken a relinquishment from his brother of all interest in and to lots 2, 7, 10, and 15.
 
 
 6
 On or about March 1st, 1883, the defendant Slaght rented and leased lot 10 of the plaintiff Powers, and received and took possession of the same. He paid rental therefor, as agreed, from the date upon which he took possession of the premises until the 31st day of October, 1887.
 
 
 7
 On the last-named day Slaght presented an application at the United States district land office for the district in which the land was situated, to enter lots 10, 11, 14, and 15 as public lands of the United States, under the act of Congress approved May 20th, 1862 (12 Stat. at L. 392, chap. 75), entitled 'An Act to Secure Homesteads to Actual Settlers on the Public Domain,' alleging in his application that he had settled and established his actual residence upon those lands March 4th, 1883, that such residence had been thereafter continuous, and that he had built a house on the land and improved the same. In the complaint in this case the plaintiffs averred that the settlement, occupation, and improvement by Slaght were under and in pursuance of the renting and leasing of and from Powers, as above set forth, and not otherwise.
 
 
 8
 The Northern Pacific Railroad Company, having been notified of the application of Slaght to enter the land, filed its objections against the allowance thereof on or about December 2d, 1887. A hearing was ordered by the United States district land officers for the district in which the land was situate, to determine the rights thereto of the railroad company and Slaght, and such proceedings were had in the contest that the district land officers, in July, 1889, held the land to be excepted from the operation of the selection of the railroad company by reason of the settlement of the plaintiff Powers, and that the defendant Slaght had settled upon the land as the tenant of Powers.
 
 
 9
 The railroad company appealed from the decision of the district land officers to the Commissioner of the General Land Office. On April 13th, 1895, the Commissioner rendered the following decision, directed to the register and receiver of the district land office at Walla Walla: 'I have considered the contest of Jacob Slaght v. Northern Pacific Railroad Company and William L. Powers, Intervener, involving lots 10, 11, 14, 15, sec. 1, T. 16 N., R. 45 east, the record in which was transmitted with your letter of July 10th, 1889, on appeal by Jacob Slaght and said railroad company from your decision in favor of William L. Powers, intervener. The land is within the limits of the withdrawal upon the line of the amended general route of said road, the map showing which was filed February 21st, 1872, and upon the definite location of the road it fell within the indemnity limits, the order for the withdrawal of which was received at the local office November 30th, 1880. These withdrawals have been held by the Department to be without authority of law and of no effect. 17 Land Dec. 8, and 19 Land Dec. 87. On December 17th, 1883, the company selected the land in question under act of July 2d, 1864 (13 Stat. at L. 365, chap. 217), per list No. 1, and on the same day said company selected the land under acts of July 2d, 1864 (13 Stat. at L. 365, chap. 217), and May 31st, 1870 (16 Stat. at L. 378), for indemnity purposes per amendatory list No. 2. On October 31st, 1887, Jacob Slaght presented an application to make homestead entry for this land, and alleged that he settled and established his actual residence thereon March 4th, 1883, and the same has been continuous; that he built a house 12x14 feet, a kitchen 10x12 feet, a stable, dug a cellar, and broke a garden spot, and built a half mile of fence, and that his improvements are worth about $275. The company was duly notified of said application and filed its objections against the acceptance of the same December 2d, 1887. Upon the issuance of notice to the parties in interest, a hearing in the case was had and concluded April 4th, 1889, at which all parties were represented. The testimony adduced at the hearing on behalf of Slaght shows that he established his actual residence on the land in March, 1883; that he broke and planted a garden; that within a few days after moving in the log house on the land he built an addition thereto; that in September, 1883, he built a house 12x14 feet, a kitchen, a stable, a chicken house, dug a cellar, and fenced about 80 acres; that his residence on the above-described tracts of land has been continuous since March 1st, 1883, and that his improvements are worth $400, and that he is a qualified settler.'
 
 
 10
 After stating the substance of the evidence adduced, the Commissioner proceeded: 'Therefore, in view of this showing, your decision in favor of William L. Powers is hereby reversed; likewise your decision adverse to Jacob Slaght. Your opinion that said company's selection as to this land was improperly allowed, and that the company had no right to the land prior to its selection, and as the same was occupied and improved as the home of a settler, Slaght's, at the date of selection, that such selection as to the land in question should be canceled, was in accordance with the uniform practice of the Department, and I concur therein. Accordingly, said amendatory list No. 2 of selections of December 17th, 1883, by said company is hereby held for cancelation as to said lots 10, 11, 14, and 15, sec. 1, twp. 16 N., R. 45 E. The usual time, sixty days after notice, will be allowed the railroad company and William L. Powers within which to appeal to the honorable Secretary of the Interior. Should this decision become final, Slaght will be permitted to make homestead entry for this land. You will advise him of this action.'
 
 
 11
 From the decision of the Commissioner the Northern Pacific Railroad Company appealed to the Secretary of the Interior, who, in 1896, affirmed the action of the Commissioner.
 
 
 12
 In 1897 Slaght received from the Interior Department letters patent of the United States conveying to him lots 10, 11, 14, and 15.
 
 
 13
 The plaintiffs averred that the letters patent were issued to Slaght under a misconstruction and misinterpretation of the law; that long prior to the settlement upon the land by Slaght the lands and each and all of them had been reserved for the use and benefit of the railroad company; that the plaintiff Powers had settled upon the lands with the intention of purchasing them from the company; that the lands were subject to selection by the company, and by its selection thereof it acquired the title in and to the same; that at the time Slaght applied to enter the land, and at the date of the hearings in the contest above referred to, and at the date of the issuing of the letters patent to him, the land was not, nor was it at any of those times, public land subject to settlement or entry under the land laws of the United States other than the act of Congress approved July 2d, 1864, above referred to, granting lands to the railroad company; and that the officers of the Interior Department were without authority to issue letters patent purporting to convey the land to Slaght, because the United States had, long prior to the issuing of those letters, parted with the title to the railroad company.
 
 
 14
 The complaint stated that the other of the above-named plaintiffs in this cause asserted and claimed title to certain portions of the lands in dispute under and by virtue of conveyances from Powers and his grantees.
 
 
 15
 It was also averred that the plaintiff Powers had conveyed to various parties, with warranty to defend the title thereof, certain other portions of the land; that the questions involved and to be determined in this action were of common and general interest to many persons, who were so numerous that it was impracticable to bring them into court; that the plaintiffs and such other persons were the owners in fee simple, and had an indefeasible title, and were in possession of the lots named, and the defendant claimed an interest or estate therein adverse to the plaintiffs, but that defendant had no estate, right, title, or interest whatever in the same or to any part thereof; that the defendant was threatening to commence divers suits in ejectment, and without suit forcibly to dispossess and eject plaintiffs and the other numerous parties of and from the premises or a portion thereof, and unless restrained by an order of court would bring such suits, and would also without suit forcibly enter the premises and without any right whatever eject and dispossess them; and that thereby a multiplicity of suits would be caused and great costs and injuries inflicted upon them, the courts of the state greatly and unnecessarily burdened, and great and irreparable injury wrought to the other parties having common and general interest in the question involved in the cause.
 
 
 16
 The plaintiff therefore prayed, among other things, that the letters patent issued to Slaght be declared to have been issued under a misconstruction of the law and to be void and to constitute clouds upon the titles of the plaintiffs and of the various persons to whom the plaintiff Powers had conveyed any portion of the land in dispute; that Slaght be decreed to be a trustee holding such right, title, and interest in and to those lands as he acquired under and by virtue of such letters patent, if any, for the benefit of the plaintiff Powers and his grantees, both direct and through mesne conveyances, and that Slaght be required to convey such right, title, and interest, if any, to the plaintiff Powers and his grantees. The plaintiffs also prayed for such other and further relief as was equitable and just.
 
 
 17
 A demurrer to the amended complaint was sustained, and the plaintiffs electing not to plead further, the action was dismissed.
 
 
 18
 The judgment of dismissal was affirmed by the supreme court of the state of Washington upon the authority of the decision of that court in Moore v. Cormode, 20 Wash. 305, 713, 55 Pac. 217, 1103, just decided upon appeal to this court.
 
 
 19
 Messrs. C. W. Bunn and James B. Kerr for plaintiffs in error.
 
 
 20
 Messrs. U. L. Ettinger, Charles M. Wyman, and Thomas Neill submitted the case for the defendant in error.
 
 Statement by Mr. Justice Harlan:
 
 21
 The issue as to the validity of the order of withdrawal made by direction of the Secretary of the Interior of lands within the indemnity limits of the Northern Pacific Railroad Company, as indicated by the company's accepted map of definite location, presents the controlling question in this case. Unless such order be sustained as a valid exercise of power by that officer, there is no ground upon which a decree could be rendered against Slaght.
 
 
 22
 For the reasons stated in Hewitt v. Schultz, 180 U. S. 139, ante, 309, 21 Sup. Ct. Rep. 309, just decided, we hold, in conformity with the long-established practice in the Land Department, that that order of withdrawal must be regarded as inconsistent with the true construction of the act of Congress of July 2d, 1864. The judgment of the supreme court of Washington is, accordingly, affirmed.
 
 
 23
 Mr. Justice Brewer and Mr. Justice Shiras dissented.