[No. 12326.   In Bank. — February 18, 1889.]

JOHN GALE, RESPONDENT, *v.* S. M. BEST ET AL., APPELLANTS.

PUBLIC LANDS — PATENT — JURISDICTION OF LAND DEPARTMENT. — When a law of Congress provides for the disposal and patenting of certain public lands, upon the ascertainment of certain facts, the officers of the land department have jurisdiction to inquire into and determine those facts, and the patent issued thereupon is a conclusive declaration that the facts have been found in favor of the patentee. And this rule applies to the determination of the particular character of the land which is the subject of the patent.

ID. — AGRICULTURAL PATENT — RESERVATION OF MINERAL LAND — ADJUDICATION OF CHARACTER OF LAND. — When a patent issues under a law which provides for the disposal of public land as agricultural, and there is no reservation in the law except a general reservation of mineral lands, and no reservation at all in the patent, the patent is a conclusive determination by the government that the land is agricultural, and it is not competent thereafter in an action in a court of law to reopen the question as to the character of the land.

APPEAL from a judgment of the Superior Court of Butte County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Gray & Sexton,* and *W. S. Riley,* for Appellants.

A patent is void which attempts to convey land previously granted, reserved from sale, or already appropriated. (*Stoddard* v. *Chambers,* 2 How. 284; *Bissel* v.

*Penrose*, 8 How. 317; *Easton* v. *Salisbury*, 21 How. 426; *Reichart* v. *Felps*, 6 Wall. 160; *Best* v. *Polk*, 18 Wall. 112; *Morton* v. *Nebraska*, 21 Wall. 660.) A void patent is a nullity; and when set up and relied on as a muniment of title, may be attacked directly or collaterally. (*Yount* v. *Howell*, 14 Cal. 469; *Doll* v. *Meador*, 16 Cal. 325; *Carr* v. *Quigley*, 57 Cal. 394.) It may be shown that the land is reserved by law. (*McLaughlin* v. *Powell*, 50 Cal. 64; *Newhall* v. *Sanger*, 92 U. S. 761; *Smelting Co.* v. *Kemp*, 104 U. S. 641; *Deffeback* v. *Hawke*, 115 U. S. 392.)

*Hundley & Gale*, for Respondent.

The determination of the land-office as to the requisite facts to give title under the patent is conclusive. (*Johnson* v. *Towsley*, 13 Wall. 72–83; *Moore* v. *Robbins*, 96 U. S. 530; *Quinby* v. *Conlan*, 104 U. S. 420–427; *Kentfield* v. *Hayes*, 57 Cal. 409; *Ferry* v. *Street*, 11 Pac. Rep. 571 (Sup. Ct. Utah, 1886); *Steel* v. *Smelting Co.*, 106 U. S. 447; *Smelting Co.* v. *Kemp*, 104 U. S. 640; *Vance* v. *Burbank*, 101 U. S. 514; *Yount* v. *Howell*, 14 Cal. 469; *French* v. *Fyan*, 93 U. S. 170.) The patent cannot be collaterally attacked in ejectment. (*Cruz* v. *Martinez*, 53 Cal. 243; *Yount* v. *Howell*, 14 Cal. 465; *Turner* v. *Donnelly*, 12 Pac. Rep. 469; *Deffeback* v. *Hawke*, 115 U. S. 392.) A tortious entry upon the possession of the patentee can give no rights to make a mining location. (*Belk* v. *Meagher*, 104 U. S. 285; *Cowell* v. *Lammers*, 10 Saw. 246.)

McFarland, J.—This is an action to recover possession of certain land, and to restrain defendants from doing certain acts thereon in the nature of waste. Judgment went for plaintiff, and defendants appeal from the judgment, and from an order denying a motion for a new trial.

The land in contest is within the limits of the grant of lands by Congress to the California and Oregon Railroad Company, a corporation; and on March 17, 1875,

the government of the United States executed and delivered its patent, in due form of law, to the Central Pacific Railroad Company, a corporation, successor to said first-named corporation, by which it conveyed said land to said last-named corporation without any reservation whatever. Plaintiff holds, and was in possession, under said Central Pacific Railroad Company. In December, 1885, and while plaintiff was in possession of said land, defendants entered thereon, and did the usual acts which constitute the location of a mining claim upon the public domain; and in December, 1886, they took possession of said land and dispossessed plaintiff; and since then, until restrained by order of court, were engaged in digging, excavating, and removing large quantities of the soil, etc., from said land. They claim a right to the possession of the land upon the ground that it is mineral land, and that all mineral land was reserved in the grant by Congress to said railroad company. That part of their answer which sets up this defense was, on plaintiff's motion, stricken out; and at the trial an objection to their offer to prove that the land was mineral was sustained. Upon these two rulings of the court below, the main point in the case arises.

The rule is well settled by numerous decisions of the supreme court of the United States that when a law of Congress provides for the disposal and patenting of certain public lands upon the ascertainment of certain facts, the proper officers of the land department of the general government have jurisdiction to inquire into and determine those facts; that the issuance of a patent is an official declaration that such facts have been found in favor of the patentee; and that in such a case the patent is conclusive in a court of law, and cannot be attacked collaterally. Of course, if the patent be void upon its face, or if looking beyond the patent for a law upon which it is based it is found that there is no law which authorizes such a patent under any state of

facts, or that the particular tract named in the patent has been absolutely reserved from disposal, then the patent would be worthless and assailable from any quarter. For instance, if a certain section or a certain township described by legal subdivisions should be expressly and unconditionally reserved by Congress from disposal under any statute, a patent for any part of such tract would be void. But if a large body of public lands be subjected to sale or other disposition under a law which has merely a general reservation of such parts of those lands as may be found to be of a particular character,— such as swamp or mineral,— then the land department has jurisdiction to determine the character of any part thereof, and a patent is conclusive evidence that such jurisdiction has been exercised. In such a case the patent could be attacked only by a direct proceeding, and by a person who connects himself directly with the title of the government.

There are many decisions of the supreme court of the United States establishing these views; and it is sufficient to refer to the cases of *Smelting Company* v. *Kemp*, 104 U. S. 636, and *Steel* v. *Smelting Company*, 106 U. S. 447, where Mr. Justice Field, in elaborate opinions, discusses the whole subject, and cites the other cases bearing upon the question. It may, however, be well, perhaps, to allude briefly to the case of *French* v. *Fyan*, 93 U. S. 169, because that case seems, in principle, to be exactly like the one at bar. In that case a patent had been issued to the state of Missouri for certain swamp and overflowed land, under a certain act of Congress. A party claiming the land under a grant to a railroad company, which would have carried the title if the land were *not* swamp, brought an action of ejectment, and sought to introduce parol evidence to prove that as a matter of fact the land was not of that character, and thus impeach the validity of the patent. There, as in the case at bar, the question was as to the *character* of

the land.   The court below rejected the offered evidence, and held that the patent concluded the question.   The supreme court sustained the ruling of the court below, and Mr. Justice Miller, in delivering its opinion, said: "We are of opinion that in this action of law it would be a departure from sound principle, and contrary to well-considered judgments in this court and in others of high authority, to permit the validity of the patent to the state to be subjected to the test of the verdict of a jury on such oral testimony as might be brought before it.   It would be substituting the jury, or the court sitting as a jury, for the tribunal which Congress had provided to determine the question, and would be making a patent of the United States a cheap and unstable reliance as a title for lands which it purported to convey."

In *Steel* v. *Smelting Co., supra,* Justice Field, whose exhaustive opinion we cannot here undertake to reproduce, among other things, says as follows: "We have so often had occasion to speak of the land department, the object of its creation, and the powers it possesses in the alienation by patent of portions of the public lands, that it creates an unpleasant surprise to find that counsel, in discussing the effect to be given to the action of that department, overlook our decisions on that subject.   That department, as we have repeatedly said, was established to supervise various proceedings whereby a conveyance of the title from the United States to portions of the public domain is obtained, and to see that the different requirements of acts of Congress are fully complied with. Necessarily, therefore, it must consider and pass upon the qualifications of the applicant, the acts he has performed to secure the title, *the nature of the land,* and whether it is of the class which is open to sale.   Its judgment upon these matters is that of a special tribunal, and is unassailable except by direct proceedings for its annulment or limitation.   Such has been the uniform language of this court in repeated decisions."   And again, speaking

of the lands held by the possessor of a patent, he says: "If intruders upon them could compel him in every suit for possession to establish the validity of the action of the land department, and the correctness of its rulings upon matters submitted to it, the patent, instead of being a means of peace and security, would subject his rights to constant and ruinous litigation. He would recover one portion of his land if the jury were satisfied that the evidence produced justified the action of that department, and lose another portion, the title whereto rests upon the same facts, because another jury came to another conclusion. So his rights in different suits upon the same patent would be determined, not by its efficiency as a conveyance of the government, but according to the fluctuating prejudices of different jurymen, or their varying capacities to weigh evidence." (104 U. S. 636, 641.) And the pith of the whole matter is aptly expressed by the same learned justice in *Smelting Co.* v. *Kemp*, 104 U. S. 636, where, speaking of the land department, he says: "Indeed, the doctrine as to the regularity and validity of its acts, where it has jurisdiction, goes so far that if *in any circumstances under existing law* a patent would be held valid, it will be *presumed* that such circumstances existed." (104 U. S. 646.)

It is contended by appellants that former decisions of this court, in *McLaughlin* v. *Powell*, 50 Cal. 64, *Carr* v. *Quigley*, 57 Cal. 394, and *Chicago Q. M. Co.* v. *Oliver*, 75 Cal. 194, are in conflict with the doctrine above stated. Whether or not there be any expressions in the opinion in either of those cases inconsistent with the views of the highest federal court on the subject (which views, in the end, on a question like this must prevail), it is not necessary here to consider. In order to affirm the judgment in the case at bar, there is no necessity to upset either of those cases. In *McLaughlin* v. *Powell*, the patent itself expressly excepted "all mineral lands, should

any be found to exist in the tracts," embraced by the patent. And the decision is expressly put upon the ground that there was that exception, and that it was "part of the description" of the lands conveyed. And it may be strongly argued, that in such case, although it was the duty of the land department to determine the character of the land before the issuance of the patent, yet, as the patent shows upon its face that such duty was not performed, the patentee must be held to have taken it knowing its uncertain and unsubstantial character. On the other hand, Judge Sawyer has held, in an opinion of great force and ability, that the issuance of a patent in such a case was a conclusive declaration that the land was of the character to be properly patented under the law,—that is, agricultural land; that there is no authority to make in such a patent a general reservation of mineral lands,—any more than there is in case of a pre-emption patent; and that such a reservation is void. (*Cowell* v. *Lammers*, 10 Saw. 246.) At all events, as in the case at bar the patent contains no reservation whatever, the case of *McLaughlin* v. *Powell*, is not authority here. And the same may be said of *Chicago Q. M. Co.* v. *Oliver*. In that case the patent also excepted "all mineral lands, should any be found to exist," etc. *Carr* v. *Quigley* is not in point at all. In that case there was no question about the character of the land patented. It was claimed to be within a "government reservation"; and that the body of land itself involved in that case, without reference to its character, was expressly reserved from the operation of the law under which the attempt was made to patent it.

Our opinion is, that where a patent issues for public land under a law which provides for its disposal as agricultural land, — either to a railroad company or to pre-emption or homestead claimants, — and there is no reservation in the law except a general one of mineral lands, and no reservation at all in the patent, then the

patent must be considered as a conclusive determination by the government that the land is agricultural; and afterward, in an action in a court of law, it is not competent to reopen the question of the character of the land. The opposite view would render the titles to a large region of California now rapidly filling up with agricultural settlers unstable, insecure, and almost worthless. It would affect, also, those holding through patents under the pre-emption and homestead laws,—for mineral lands are exempted from the provisions of those laws. The theory of that view is, that if the land previously patented as agricultural can at any time be shown to be in fact mineral, then the title to it never passed from the United States, but it had always remained a part of the public domain; and as no statute of limitations runs against the government, the insecurity of the title under the patent would be perpetual, and an attack upon it could be made as successfully one hundred years hence as now. Such, in our opinion, is not the law.

The view taken of the question presented by the court below was correct; and we see no error in the record.

Judgment and order affirmed.

Works, J., Paterson, J., Thornton, J., and Sharpstein, J., concurred: