STONEWALL PHOSPHATE COMPANY, APPELLANT, VS. JOHN B. PEYTON, ET AL., APPELLEES.

1. A grant of land from the United States Government according to the legal subdivisions established by the United States survey, presupposes an actual ground survey of the land, and the patent must be considered as conveying the land as actually surveyed.

2. When a line was actually run and a division made in an original survey of land by the United States Government, and the line or division was marked by corners or natural objects, and such survey be established in accordance with the United States field-notes, the grantee in a patent from the government will take according to such actual survey, notwithstanding any mistaken description as to courses and distances, or the quantity of land stated to be conveyed.

3. When a law of Congress provides for the disposal of the public lands upon the ascertainment of certain facts by the officers in the United States land department, a patent issued from such department is a conclusive declaration of such officers, in collateral proceedings, of a finding of the facts authorizing the grant; but this principle of construction will not permit such officers in granting lands according to an actual survey of the United States to divide the lands as to quantity otherwise than was done by the actual survey, and when there is a conflict between the quantity expressed in the patent and that shown by the actual survey established, the latter will control.

Appeal from the Circuit Court for Marion county.

The facts in the case are stated in the opinion.

*Geo. P. Raney, O. T. Green* and *Geo. H. Badger,* for Appellant.

*W. S. Bullock,* for Appellees.

MABRY, J.:

A bill was filed in this case by appellees against appellant to enjoin the latter from mining phosphate rock on the N. W. ¼ of S. W. ¼ of section 31, township 15 S., R. 19 E., alleged to be the property of appellees. Appellant owned the S. W. ¼ of S. W. ¼ of the same section, township and range, and claimed that the mining was done on its own land, and not on the property of appellees. No question is presented as to the sufficiency of the bill or answer, and the only point to be settled is whether the testimony shows that the mining was done by appellant on its own land or on the quarter-quarter section owned by appellees. The decision of the lower court sustained the contention of the complainants, appellees here, that the phosphate mine was situated on their land and it was so located by the dividing line between the quarter quarter sections as established by the court. It is now contended that this decree can not be sustained on the evidence.

The exterior lines of township 15 south, range 19 E., were established by United States surveys prior to the year 1845, and during that year the western and southern subdivisions of the township into sections were completed. The return of the survey to the Surveyor-General's office shows that section 31 of the township contained 685 acres, but there was no subdivision of this section further than the establishment of the section, and quarter section posts on the exterior

boundaries thereof.   The excess of land in the section
has given rise to the contention as to the correct di-
viding line between the quarter quarter sections owned
by the respective parties.   The survey of the section,
as shown by undisputed testimony, commenced at the
northwest corner, and extended south, and upon this
fact it is claimed for the phosphate company that the
excess of land must be given to the quarter-quarter
section owned by it, the same being in the extreme
southwest corner of the section.   On the other hand it
is insisted that as there was no interior subdivision of
the section it should be divided into equal parts, and
in support of this position reliance is placed upon the
evidence produced that the officers of the local land
department of the government had so divided the sec-
tion in allowing entries of, and in granting patents to,
different portions of same.   It is clearly shown by the
testimony of the officers of the land office department
and patents from the government to different portions
of the section granted, that it was practically divided
into forties of 42 81-100 acres each.

Appellant derived title by mesne conveyance from
Teresa Hutchinson who entered with other land the
S. W. ¼ of S. W. ¼, section 31, township 15 S., R. 19
E., in 1862, and this forty is said to contain 42 82-100
acres, and appellees obtained their title by mesne con-
veyances from Ida E. Beerbower, who entered in 1885,
and the patent to her describes the land as containing
42 82-100 acres.   The government has patented all the
land in the section, and the forties therein. other than
those mentioned, are described as containing 42 81-100
acres.

The field notes and plats of the original surveys,
and the testimony of three surveyors, besides testi-

mony furnished by the land officers, are before us. Two of the surveyors, testifying for the defense, make the distance from the northwest corner to the southwest corner of the section, eighty-seven chains and forty-seven links. The field notes call for eighty-seven and one-half chains. In running this line the two surveyors mentioned state that they found the section and quarter section posts on the western boundary of the section with the bearing trees as called for by the field notes. According to their testimony they found not only the location of the government posts by the witness trees, but also chopped trees showing the original line as run by the original government survey. The survey as originally made, commenced at the northwest corner of the section and in running south from this point on the western side of the section, the field notes call for a quarter section post forty chains from the starting point with designated witness trees. The surveyors say they found the witness trees just forty chains from the section corner which they were enabled by the field notes to clearly establish. Running south on the west boundary line of the section from the quarter section post, located as above forty chains from the northwest corner of the section, the field notes call for forty-seven and one-half chains to the southwest corner of the section, and the testimony of the surveyors is that they located this corner by the witness trees forty-seven chains and forty-seven links from the quarter section post. If the testimony of these two surveyors be true, the line of the western boundary of both quarter-quarter sections taken together can not be less than forty-seven chains and forty-seven links, and the contents of each forty can not be less than forty-seven acres. It is true that the

third surveyor who testified in the case says that according to the field notes the two forties owned by the parties, each contained 43 25-100 acres, and in some other respects he differs from the others, but he saw no bearing trees and other unmistakable evidences of the original line as run by the first surveyors as detailed above, nor does he say that none existed. The positive testimony of the two surveyors who found the bearing trees for the section and quarter section posts at the points of distances, as called for by the field notes, is clearly entitled to more consideration than that of one who says he found no bearing trees and gives no corroborative evidence of facts to sustain his testimony.

The real question on the evidence, we think, is this: does the fact that the local land office equally divided the section in permitting entries to be made and granting patents therefor, override and control the survey as actually made by the surveyors in the original survey, and which is the basis upon which the land was sold? This is the controlling question in this case, because if the dividing line between the forties is to be ascertained by giving to each one an equal portion of the entire section, as indicated by the quantity of land in the patents, then the mining, as is conceded, was conducted on the land of appellees; but if the division is to be made according to the survey as originally made on the ground, as shown by the evidence of the surveyors mentioned, then appellant did not trespass upon appellees' land, and the decision was wrong.

To the question, as we have stated it, the law gives a clear and definite answer. The grant of all lands presupposes an actual survey of them, and the patent

must be considered as conveying the land as actually surveyed. Therefore, when it can be shown that a line was actually run, or division made, by the surveyor in surveying the land, and that such line or division was marked by corners or natural objects, and such survey is established, the grantee in a patent will take according to such actual survey, notwithstanding any mistaken description as to courses and distances contained therein, or the quantity of land stated to be conveyed. It is a familiar rule that courses and distances must give way to natural, as well as artificial, objects when they are inconsistent. In a description where there are no natural or artificial objects given to designate the limits of the land granted, and no evidences to be had of the actual survey as made on the ground —as where no marked trees or posts can be definitely located by the field notes of the survey, and no reference to adjacent lands is so made that the limits of the tract granted can be definitely fixed—resort may be had to courses and distances. They are also valuable in connection with the field notes in locating the corners and posts as fixed in the original survey. Our previous decisions, and authorities therein cited, fully sustain these conclusions. Liddon vs. Hodnett, 22 Fla. 442; Miller vs. White, 23 Fla. 301, 2 South. Rep. 614; Watrous vs. Morrison, 33 Fla. 261, 14 South. Rep. 805; *vide* Riley vs. Griffin, 16 Ga. 141, S. C. 60 Am. Dec. 726; McClintock vs. Rogers, 11 Ill. 279.

The quantity of land contained in a patent may be considered in ascertaining the extent of the grant in area, but can not control the actual boundary limits of the land as located on the ground by the original government survey. This is in accord with the letter and spirit of section 2396, Chapter 9, Revised Statutes;

of the United States. This section directs the subdivision of the public lands into quarter sections, and that corners located and marked in the field shall be established as the proper corners of sections and quarter sections, and that corners of half and quarter sections not so marked shall be placed as nearly as possible *equi distant* from the two corners standing on the same line. The second paragraph of the section provides that the boundary lines actually run and marked in the field shall be established as the proper boundary lines of the sections or subdivisions. According to all the authorities, the boundaries as actually located by the original survey must, when established, control in ascertaining the quantity of land contained in a patent; and the same is true of a deed unless a clear intent to the contrary is expressed therein.

The position taken by counsel for appellees, that the action of the local land officers in dividing the section equally. or practically so, will control the description of the land as to section and quarter-quarter section, according to the original survey, is not correct. This position is based upon decisions like those in Gale vs. Best, 78 Cal. 235, 20 Pac. Rep. 550; and Steel vs. Smelting Co., 106 U. S. 447, 1 Sup. Ct. Rep. 389, holding that when a law of Congress provides for the disposal of the public lands upon the ascertainment of certain facts by the officers of the land department, the patent issued is a conclusive declaration of such officers that the facts authorizing the grant have been found by them in favor of the grantee. We do not question the correctness of such decisions, but the principle decided does not apply to the facts of the present case.

As stated above the grant is conclusively presumed to be made upon an actual field survey of the land, and the reference in the patent to the section, township and range must be taken as referring absolutely to the actual ground survey of the land as originally made, and upon which the grant was unquestionably made. The surveyors were the officers whose duty it was to subdivide the township into sections and quarter-quarter sections, and mark the boundary thereof, and this having been done, the local land officers granted the land in accordance with such survey. They had no authority to do otherwise.

The object of the bill in this case is not to establish the boundary line between the lands of the respective parties, but to restrain appellant from mining phosphate on land alleged to belong to appellees. As clearly shown by the evidence, the contents of the forties owned by the respective parties contained more land, as shown by the survey actually made on the ground, than is given to them by the patents issued. And it is also apparent from the evidence that an equal division of said quarter-quarter sections, according to the actual survey of the government, will place the location where the mining was done on the land of appellant, and this being so, we hold that the court erred in decreeing in favor of appellees; and this result follows, on the showing before us, without reference to where the dividing line should definitely be located. Under no division, conceded to be proper, according to the survey made on the ground, could the phosphate mine be located on the land of appellees, and without intimating whether an equal division of the land contained in the surveyed limits of the two forties should be made, we hold that the testimony

shows the mine in question to be on the forty owned by appellant, and will, therefore, direct a reversal of the decree entered, and that the bill be dismissed.

Order to be entered accordingly.