## MOORE *v.* CORMODE.

ERROR TO THE SUPREME COURT OF THE STATE OF WASHINGTON.

No. 49. Argued October 15, 16, 1900.—Decided January 7, 1901.

*Hewitt* v. *Schultz, ante* 139, followed in regard to the construction of the act of July 2, 1864, c. 217, to be observed in ·the administration of the grant of public lands to the Northern Pacific Railroad Company.

THIS action was commenced in the Superior Court of the State of Washington for Garfield County. From an amended complaint filed by Moore, now plaintiff in error, it appears that on December 12, 1883, the Northern Pacific Railroad Company, under authority of the act of Congress of July 2, 1864, 13 Stat. 365, c. 217, granting lands to aid in the construction of its road, selected under the direction of the Secretary of the Interior, the northwest quarter of section 3, in township 13 north of range 42 east, Willamette meridian, in Garfield County in the then Territory of Washington, as indemnity and in lieu of other specified lands excepted from its grant.

On July 2, 1895, the railroad company for a valuable consideration sold and conveyed to Moore by general warranty deed the north half of the above described quarter section.

Prior to that transfer, namely, on the 17th day of July, 1890, the defendant Cormode presented for filing in the district land

office at Walla Walla, Washington, a declaratory statement set-ting forth that the land in question had been settled on in March, or April, 1882, by Mrs. Ora Standiford, and that she and a sub-sequent purchaser of her improvements had resided continuously thereon until 1889, when the defendant purchased the improve-ments and moved upon the land.

Upon a hearing ordered before the land office at Walla Walla, to determine the right of the Northern Pacific Railroad Com-pany to the land in dispute, the register and receiver of that office, in January, 1891, held that the settlement upon the prem-ises by Mrs. Standiford and the occupation of the same there-after by her and the subsequent purchasers, including the de-fendant, excepted the lands from the grant to the railroad com-pany, and that therefore they were not subject to selection by it. The selection made by the company was accordingly recom-mended to be cancelled.

An appeal was taken by the railroad company to the Com-missioner of the General Land Office, and that officer rendered a decision on April 25, 1895, directed to the register and re-ceiver at Walla Walla, in which he said: "I have considered the above entitled case, involving N. W. 3, 13 N., 42 E., appeal by the R'y Co., from your decision in favor of Cormode. The land is within the indemnity limits of the grant to the North-ern Pac. R. R. Co., and was selected by the Co. Jan. 5th, 1884, list No. 1. Both parties appearing at the hearing held Jan. 6th, 1891, and from the testimony then taken it appears in substance as follows: The land was settled on March or April, 1882, by Mrs. Ora Standiford, who was qualified to enter under the home-stead law. Her settlement consisted of the erection of a frame house 16×18 ft., 1 story and a half high, on the land, the plow-ing and cultivating of three or four acres, and the digging of a well. At that time she established her residence on the land and remained there continuously with her family until the fall of 1885, when she sold her improvements upon and interest in the land, to John A. Long, who occupied the land for a short time and was succeeded by his brother, Henry W. Long, in 1888, who remained in possession until the fall of 1889, when the present applicant, Cormode, who applied for the same under

preëmption law in July, 1890, purchased the improvements and moved onto the land. Since then Cormode continuously resided upon and improved the land. It would thus appear that on Jan. 5th, 1884, when the right of the R'y Co. attached, the land was embraced in the *bona fide* settlement of a party, Mrs. Standiford, qualified to enter the same under the settlement laws. Your decision is therefore affirmed and the Co.'s selection of that date held for cancellation as invalid."

The decision of the Commissioner was sustained by the Secretary of the Interior on May 20, 1896.

Thereafter the defendant Cormode made final proof of his claim, and, a final receipt having been issued to him by the district land office, on the 2d of May, 1898, he received a patent from the United States conveying to him the title to the land.

The plaintiff averred that the decisions of the register and receiver of the General Land Office and the Secretary of the Interior were made and rendered under misapprehension of law; that the officers of the Land Department and the Secretary of the Interior were wholly without jurisdiction to consider the application of the defendant to make preëmption entry of the land, for the reason that the land was not at that time public land of the United States and was not then subject to homestead entry, but before the date of the defendant's application had been withdrawn from entry or sale, and that the decisions allowing the defendant to enter the land were void, and the entry made also void and of no effect; that the Northern Pacific Railroad Company under the grant by the act of July 2, 1864, became and was the owner in fee simple of the land and entitled to a patent therefor from the United States; that the defendant's patent constituted him a trustee, holding the legal title for the benefit of the plaintiff, and was a cloud upon the latter's title; and that the defendant wrongfully and unlawfully withheld the possession of the premises, although the plaintiff had at various times demanded the same.

A demurrer to the complaint was sustained; and the plaintiff declined to plead further. Whereupon the court, on motion of the defendant, dismissed the action. That judgment was affirmed in the Supreme Court of the State, all the mem-

bers of the court concurring in such affirmance.    In its opinion
in the case that court said: "But, taking a broad view of the
question in considering the primary effect of the act [of Con-
gress of July 2, 1864] as a matter of public policy, which is
always permissible where there is room for construction and
the true intent is a matter of doubt, we are of the opinion that
there was no intention to withdraw from actual settlement the
immense quantity of lands embraced within the indemnity
limits.    This phase of the matter has received consideration in
a number of cases.    Attention is called to the fact that it was
expected when the law was enacted that the road would be
speedily constructed, and that it would traverse, in the main,
practically unoccupied territory, and that there would be con-
sequently no great loss of lands within the place limits.    It
might well have been considered that there would be ample
lands within the indemnity limits to make good such losses, al-
though these lands were open to settlement at all time prior to
their actual selection.    See *Northern Pacific Railroad* v. *Mus-
ser-Sauntry Land &c. Co.*, 168 U. S. 604.    And after a con-
sideration of the numerous cases cited in the briefs we are
of the opinion that the grant did not take effect as to any lands
within the indemnity limits until actually selected by the com-
pany, and that prior thereto they were open to settlement.    It
has been the long-continued policy of the Government to fa-
cilitate the settlement of its unoccupied lands, and so great a re-
striction as this would have been under the company's conten-
tion could hardly have been contemplated.    The departmental
withdrawal was subsequently set aside and cannot operate to
extend the provisions of the act.    Those parts of the discussion
or statements in some of the cases most relied upon by the ap-
pellant are not in harmony with the later expressions of the
court, especially in *Northern Pacific Railroad* v. *Colburn*,
164 U. S. 383, and *Northern Pacific Railroad* v. *Sanders*,
166 U. S. 620.    Also the prevailing and long-continued con-
struction of the act by the Land Department is entitled to great
weight in determining the questions raised.    Many patents have
been issued thereunder to settlers who are now occupying the
lands, as in this case, and doubtless frequent transfers have

been made to others who have regarded the title as perfect, for the issuance of a patent is regarded by the common mind as conclusive, and if it is a matter of doubt the overturning of these rights and the construction of the Land Department should be reserved for the highest court in the land. Furthermore it is most strenuously insisted by the respondent that the case must be decided in his favor on the ground that it does not appear that there was any finding by the Land Department that there was any deficiency in place lands, and that under the familiar rule applied to judgments, if an affirmative finding that there was no loss of place limits was necessary, then that such finding would be presumed ; that all presumptions are in favor of the regularity of the proceedings in the Land Department to sustain a patent. The appellant has undertaken to conclude this matter by averment in his complaint, and contends that the indemnity lands were appropriated without selection by reason of the deficiency in place limits, and that the court is bound by the allegations of the complaint in this particular. There is no allegation, however, that there was a finding by the Secretary of the Interior or in the proceedings before the Land Department that there was a deficiency in place limits. And it seems to us that to enable the company to claim this land there must have been a finding that there was a deficiency within the place limits for which the lands claimed were taken, or that it was conclusively established in the proceedings before the department. This matter was a question of fact essentially within the jurisdiction of the Land Department, and its judgment should be sustained unless it appears that it is in conflict with the facts therein found or established. It may have been found that there was no deficiency entitling the company to select these lands. It was found that when the selection was made the land was occupied by a qualified settler, and the company therefore not entitled to take it. The contention of the appellant with reference to the allegations of the complaint in this respect are in our opinion overborne by the authorities. *Johnson* v. *Drew*, 171 U. S. 93 ; *Durango Land and Coal Co.* v. *Evans*, 80 Fed. Rep. 425 ; *Gale* v. *Best*, 78 California, 235 ; *New Dunderberg Min. Co.* v. *Old et al.*, 79 Fed. Rep. 598 ; " 20 Wash. 305.

*Mr. James B. Kerr* and *Mr. C. W. Bunn* for plaintiff in error.

*Mr. George H. Patrick* for defendant in error. *Mr. George Turner* filed a brief for same.

Mr. Justice Harlan, after stating the facts as above reported, delivered the opinion of the court.

The land in controversy is within the indemnity limits of the Northern Pacific Railroad Company as shown by its map of definite location. It was embraced by the order made by the Secretary in November, 1880, whereby the local land office was directed to withdraw and hold reserved "from sale or homestead or other entry" all of the odd-numbered sections "within the place and first indemnity limits" of the Northern Pacific Railroad, as indicated on its map of definite location filed in October, 1880. That order of course proceeded on the ground that under the act of July 2, 1864, 13 Stat. 365, c. 217, it was competent for the Secretary of the Interior immediately upon the filing and acceptance of the company's map of definite location to withdraw from the operation of the preëmption and homestead laws all the odd-numbered sections within the indemnity limits of the road and coterminous with the line of such definite location. The act of 1864 has been differently interpreted in the Land Department since the decision in 1888 of Secretary Vilas in *Northern Pacific Railroad* v. *Miller,* 7 L. D. 100. For the reasons stated in the opinion just delivered in *Hewitt* v. *Schultz,* we accept that decision as indicating the construction of the act of 1864 to be observed in the administration of the grant of public lands to the Northern Pacific Railroad Company. This leads to an affirmance of the judgment without reference to other questions discussed at the bar.

The judgment of the Supreme Court of the State of Washington must be and is hereby

*Affirmed.*

Mr. Justice White concurred in the result.

Mr. Justice Brewer and Mr. Justice Shiras dissented.