180 U.S. 167
 21 S.Ct. 324
 45 L.Ed. 476
 J. M. MOORE, Plff in Err.,
v.
JOHN CORMODE.
 No. 49.
 Argued October 15, 16, 1900.
 Decided January 7, 1901.
 
 This action was commenced in the superior court of the state of Washington for Garfield county. From an amended complaint filed by Moore, now plaintiff in error, it appears that on December 12th, 1883, the Northern Pacific Railroad Company, under authority of the act of Congress of July 2d, 1864 (13 Stat. at L. 365, chap. 217), granting lands to aid in the construction of its road, selected, under the direction of the Secretary of the Interior, the northwest quarter of section 3, in township 13 north, of range 42 east, Willamette meridian, in Garfield county, in the then territory of Washington, as indemnity and in lieu of other specified lands excepted from its grant.
 On July 2d, 1895, the railroad company, for a valuable consideration, sold and conveyed to Moore by general warranty deed the north half of the above-described quarter section.
 Prior to that transfer, namely, on the 17th day of July, 1890, the defendant Cormode presented for filing in the district land office at Walla Walla, Washington, a declaratory statement setting forth that the land in question had been settled on in March or April, 1882, by Mrs. Ora Standiford, and that she and a subsequent purchaser of her improvements had resided continuously thereon until 1889, when the defendant purchased the improvements and moved upon the land.
 Upon a hearing ordered before the land office at Walla Walla, to determine the right of the Northern Pacific Railroad Company to the land in dispute, the register and receiver of that office, in January, 1891, held that the settlement upon the premises by Mrs. Standiford, and the occupation of the same thereafter by her and the subsequent purchasers, including the defendant, excepted the lands from the grant to the railroad company, and that therefore they were not subject to selection by it. The selection made by the company was accordingly recommended to be canceled.
 An appeal was taken by the railroad company to the Commissioner of the General Land Office, and that officer rendered a decision on April 25th, 1895, directed to the register and receiver at Walla Walla, in which he said: 'I have considered the above-entitled case, involving N. W. 3, 13 N., 42 E., appeal by the R'y Co. from your decision in favor of Cormode. The land is within the indemnity limits of the grant to the Northern Pac. R. R. Co. and was selected by the Co. Jan. 5th, 1884, list No. 1. Both parties appearing at the hearing held Jan. 6th, 1891, and from the testimony then taken it appears in substance as follows: The land was settled on March or April, 1882, by Mrs. Ora Standiford, who was qualified to enter under the homestead law. Her settlement consisted of the erection of a frame house 16x18 ft., 1 story and a half high, on the land, the plowing and cultivating of 3 or 4 acres, and the digging of a well. At that time she established her residence on the land and remained there continuously with her family until the fall of 1885, when she sold her improvements upon and interest in the land to John A. Long, who occupied the land for a short time, and was succeeded by his brother, Henry W. Long, in 1888, who remained in possession until the fall of 1889, when the present applicant, Cormode, who applied for the same under pre-emption law in July, 1890, purchased the improvements and moved onto the land. Since then Cormode continuously resided upon and improved the land. It would thus appear that on Jan. 5th, 1884, when the right of the R'y Co. attached, the land was embraced in the bona fide settlement of a party, Mrs. Standiford, qualified to enter the same under the settlement laws. Your decision is therefore affirmed and the Co.'s selection of that date held for cancelation as invalid.'
 The decision of the Commissioner was sustained by the Secretary of the Interior on May 20th, 1896.
 Thereafter the defendant Cormode made final proof of his claim, and, a final receipt having been issued to him by the district land office, on the 2d of May, 1898, he received a patent from the United States conveying to him the title to the land.
 The plaintiff averred that the decisions of the register and receiver of the General Land Office and the Secretary of the Interior were made and rendered under misapprehension of law; that the officers of the Land Department and the Secretary of the Interior were wholly without jurisdiction to consider the application of the defendant to make pre-emption entry of the land, for the reason that the land was not at that time public land of the United States and was not then subject to homestead entry, but before the date of the defendant's application had been withdrawn from entry or sale, and that the decisions allowing the defendant to enter the land were void, and the entry made also void and of no effect; that the Northern Pacific Railroad Company under the grant by the act of July 2d, 1864, became and was the owner in fee simple of the land, and entitled to a patent therefor from the United States; that the defendant's patent constituted him a trustee, holding the legal title for the benefit of the plaintiff, and was a cloud upon the latter's title; and that the defendant wrongfully and unlawfully withheld the possession of the premises, although the plaintiff had at various times demanded the same.
 A demurrer to the complaint was sustained; and the plaintiff declined to plead further. Whereupon the court, on motion of the defendant, dismissed the action. That judgment was affirmed in the supreme court of the state, all the members of the court concurring in such affirmance. In its opinion in the case that court said: 'But, taking a broad view of the question in considering the primary effect of the act [of Congress of July 2d, 1864] as a matter of public policy, which is always permissible where there is room for construction and the true intent is a matter of doubt, we are of the opinion that there was no intention to withdraw from actual settlement the immense quantity of lands embraced within the indemnity limits. This phase of the matter has received consideration in a number of cases. Attention is called to the fact that it was expected when the law was enacted that the road would be speedily constructed, and that it would traverse, in the main, a practically unoccupied territory, and that there would be consequently no great loss of lands within the place limits. It might well have been considered that there would be ample lands within the indemnity limits to make good such losses, although these lands were open to settlement at all times prior to their actual selection. See Northern P. R. Co. v. Musser-Sauntry Land, Logging & Mfg. Co. 168 U. S. 604, 42 L. ed. 596, 18 Sup. Ct. Rep. 205. And after a consideration of the numerous cases cited in the briefs we are of the opinion that the grant did not take effect as to any lands within the indemnity limits until actually selected by the company, and that prior thereto they were open to settlement. It has been the long-continued policy of the government to facilitate the settlement of its unoccupied lands, and so great a restriction as this would have been under the company's contention could hardly have been contemplated. The departmental withdrawal was subsequently set aside, and cannot operate to extend the provisions of the act. Those parts of the discussion or statements in some of the cases most relied upon by the appellant are not in harmony with the later expressions of the court, especially in Northern P. R. Co. v. Colburn, 164 U. S. 383, 41 L. ed. 479, 17 Sup. Ct. Rep. 98; and Northern P. R. Co. v. Sanders, 166 U. S. 620, 41 L. ed. 1139, 17 Sup. Ct. Rep. 671. Also the prevailing and long-continued construction of the act by the Land Department is entitled to great weight in determining the questions raised. Many patents have been issued thereunder to settlers who are now occupying the lands, as in this case, and doubtless frequent transfers have been made to others who have regarded the title as perfect, for the issuance of a patent is regarded by the common mind as conclusive; and if it is a matter of doubt the overturning of these rights and the construction of the Land Department should be reserved for the highest court in the land. Furthermore, it is most strenuously insisted by the respondent that the case must be decided in his favor on the ground that it does not appear that there was any finding by the Land Department that there was any deficiency in place lands, and that under the familiar rule applied to judgments, if an affirmative finding that there was no loss of place limits was necessary, then that such finding would be presumed; that all presumptions are in favor of the regularity of the proceedings in the Land Department to sustain a patent. The appellant has undertaken to conclude this matter by averment in his complaint, and contends that the indemnity lands were appropriated without selection by reason of the deficiency in place limits, and that the court is bound by the allegations of the complaint in this particular. There is no allegation, however, that there was a finding by the Secretary of the Interior or in the proceedings before the Land Deparment that there was a deficiency in place limits. And it seems to us that to enable the company to claim this land there must have been a finding that there was a deficiency within the place limits for which the lands claimed were taken, or that it was conclusively established in the proceedings before the Department. This matter was a question of fact essentially within the jurisdiction of the Land Department, and its judgment should be sustained unless it appears that it is in conflict with the facts therein found or established. It may have been found that there was no deficiency entitling the company to select these lands. It was found that when the selection was made the land was occupied by a qualified settler, and the company therefore not entitled to take it. The contention of the appellant with reference to the allegations of the complaint in this respect are in our opinion overborne by the authorities. Johnson v. Drew, 171 U. S. 93, 43 L. ed. 88, 18 Sup. Ct. Rep. 800; Durango Land & Coal Co. v. Evans, 25 C. C. A. 523, 46 U. S. App. 305, 80 Fed. Rep. 452; Gale v. Best, 78 Cal. 235, 20 Pac. 550; New Dunderberg Min. Co. v. Old, 25 C. C. A. 116, 49 U. S. App. 201, 79 Fed. Rep. 598, 20 Wash. 305, 55 Pac. 217. Messrs. C. W. Bunn and James B. Kerr for plaintiff in error.
 Messrs. George H. Patrick and George Turner for defendant in error.
 Mr. Justice Harlan, after stating the facts as above reported, delivered the opinion of the court:
 
 
 1
 The land in controversy is within the indemnity limits of the Northern Pacific Railroad Company as shown by its map of definite location. It was embraced by the order made by the Secretary in November, 1880, whereby the local land office was directed to withdraw and hold reserved 'from sale or homestead or other entry' all of the odd-numbered sections 'within the place and first indemnity limits' of the Northern Pacific Railroad, as indicated on its map of definite location filed in October, 1880. That order of course proceeded on the ground that under the act of July 2d, 1864 (13 Stat. at L. 365, chap. 217), it was competent for the Secretary of the Interior, immediately upon the filing and acceptance of the company's map of definite location, to withdraw from the operation of the pre-emption and homestead laws all the odd-numbered sections within the indemnity limits of the road and conterminous with the line of such definite location. The act of 1864 has been differently interpreted in the Land Department since the decision in 1888 of Secretary Vilas in Northern P. R. Co. v. Miller, 7 Land Dec. 100. For the reasons stated in the opinion just delivered in Hewitt v. Schultz, 180 U. S. 139, ante, 309, 21 Sup. Ct. Rep. 309, we accept that decision as indicating the construction of the act of 1864 to be observed in the administration of the grant of public lands to the Northern Pacific Railroad Company. This leads to an affirmance of the judgment without reference to other questions discussed at the bar.
 
 
 2
 The judgment of the Supreme Court of the State of Washington must be and is hereby affirmed.
 
 
 3
 Mr. Justice Brewer and Mr. Justice Shiras dissented.