(114 N. W. 485.)

---

STATE EX REL. NORTH DAKOTA STATE FAIR ASSOCIATION OF FARGO, v. HOLMES, AS STATE AUDITOR OF NORTH DAKOTA, AND STATE FAIR ASSOCIATION OF GRAND FORKS, A CORPORATION.

Opinion filed June 17, 1907.

**State Fairs — Appropriations — Compliance With Conditions.**

1. Under chapter 46, p. 71, Laws 1905, relating to state fairs, the legislature vested the power to accept the title to lands to be conveyed to the state by the fair association in the governor and attorney general, and further provided that upon failure on the part of either of two state fair associations to be organized under the act, to comply with the provisions of the act, all appropriations should be made to the one complying with the act and the state fair permanently located at the place complying with the provisions of the act.

*Held,* that the fact that the land conveyed to the state by one fair association had a mortgage thereon could not be urged by the other association as a ground for payment to it of the appropriation after the governor and attorney general had accepted the title, and the association conveying the incumbered title had relied on such acceptance.

**Same — Conveyance of Land to State — Decision of Governor and Attorney General on Title Binding.**

2. The governor and attorney general having been vested with full authority to accept the title, and having done so, no one but the state can question the legality of such acceptance as to questions of the title of the land, or of the manner of organization of the association.

**Same.**

3. It was only upon failure to comply with the provisions of the act, as to matters that were preliminary to the acceptance of the title by the governor and attorney general on behalf of the state, that the appropriation could properly be claimed by the association that had complied with the act.

**Same — Management of Fair — Reports — Forfeiture of Appropriation.**

4. The failure of one fair association to manage the state fair strictly in accordance with the law, or to use the appropriations and make reports strictly within the terms of the act, is not available to the other association as a ground for the payment to it of the appropriations.

**Same.**

5. A forfeiture of the appropriation should not be decreed, unless the act under which it is claimed clearly shows that such was the legislative intention.

Application by the state, on the relation of the North Dakota State Fair Association of Fargo, for writ of Mandamus against. H. L. Holmes, State Auditor, and the North Dakota State Fair Association of Grand Forks.

Writ denied.

*Lee & Towner, Barnett & Richardson, R. M. Pollock* and *John S. Watson, Jr.,* Relator. *Guy C. H. Corliss, J. H. Bosard* and *T. F. McCue,* defendants.

MORGAN, C. J. This is an application for a peremptory writ of mandamus against Hon. H. L. Holmes, as auditor of the state, to compel him to issue a warrant in favor of the State Fair Association of Fargo for the sum of $10,000, under the provisions of chapter 46, p. 71, Laws 1905, which is an "act establishing state fairs, locating them at Grand Forks and Fargo, and making an appropriation therefor." The proceeding is brought in the name of the state, on the relation of the North Dakota State Fair Association of Fargo, and the North Dakota State Fair Association of Grand Forks is made a party defendant on the alleged ground that it has an interest in the proceedings.

Section 1 of said act provides for the holding of a state fair biennially at the city of Grand Forks during each odd numbered year, and at the city of Fargo during each even numbered year, subject to the conditions specified in the act, and the location of the state fairs at these cities is declared to be permanent. Sections 2 and 3 of the act specify the conditions to be complied with by the cities of Grand Forks and Fargo before either becomes entitled to receive any appropriation from the state. Section 2 is as follows: "If an organization, to be known and designated as the North Dakota state fair association for Grand Forks, or by some similar name, shall be, during the year 1905, created and organized under and pursuant to the general laws of this state, in relation to

corporations, with a paid-up capital stock of not less than twenty thousand dollars, such association shall become entitled to receive the appropriations hereinafter named, upon the conditions set forth in this act. The said association may acquire the title to not less than seventy, nor more than one hundred and sixty acres of ground at or near the city of Grand Forks, in said state, and such association may, and it is hereby empowered and authorized to convey the title to the land so acquired by it, unto the state of North Dakota, which property, when so conveyed, shall be held by the state of North Dakota forever for the following purposes and none other: For the purpose of exhibiting thereon under the management of such association, or its successors, biennially, during each odd numbered year the agricultural, stock breeding, horticultural, mining, mechanical, industrial and other products and resources of the state of North Dakota, including proper exhibits of the arts, sciences and all other public displays pertinent to and dependent upon exhibitions and expositions of human art, industry and skill. The said association may use so much of its paid-up capital stock as may be necessary for the acquisition of title to the land so to be purchased by it for use as fair grounds, and the balance thereof shall be and constitute a fund towards the construction of buildings and other permanent improvements thereon." Section 3 is the same as section 2, except that it is made applicable to Fargo. Section 6 of the act provides for the acceptance of the title to the land to be conveyed by the State Fair Association, and that such acceptance shall be made by the governor and attorney general. It further provides that, should the state cease to appropriate the sum of at least $5,000, annually to be awarded as premiums, then the title of said premises shall revert to and become the property of the association that transferred the same to the state. It further provides that the act shall not become binding upon the state as to either association until the stockholders shall adopt and file with the secretary of state an irrepealable by-law relating to the board of directors. Section 7 provides, among other things, for the making of a report by each fair association on or before the first day of January each year following the holding of a state fair, and provides further what such report shall contain. Section 8 provides for an appropriation of $10,000 for the purpose of enabling said association to inclose the grounds and to aid them in the erection thereon of suitable buildings. It further

provides that no part of said appropriation shall be payable until after a deed of conveyance of the premises upon which the fair is to be held shall be made and accepted by the state, and that such appropriation should lapse and only become available to the association whose conveyance was made and accepted by the state on or prior to June 1, 1906. Section 9 provides for an annual appropriation of $10,000 to be expended by the directors of said association; not more than $5,000 thereof in any one year to be used for the erection of buildings and making permanent improvements, and the other $5,000 to be used and expended as premiums to the exhibitors at said fair. Section 10 is as follows: "This act shall not become binding or effective upon the state as to either of such associations until the stockholders of such association shall adopt a by-law expressly accepting and agreeing to all of the conditions hereof, and file a certified copy of said by-law with the secretary of state." Section 11 is as follows: "In the event of the failure of such associations to comply with the provisions of this act, then the other association shall be entitled to hold a state fair upon its grounds during each year and receive the appropriation herein made for the association failing thus to comply with this act, and such failure on the part of either association shall operate to permanently establish the state fair upon the grounds of the other association."

The writ is demanded by the relator upon the grounds that the State Fair Association of Grand Forks has not complied with the provisions of this act, and the relator's contentions as to such failure may be summarized as follows: (1) The Grand Forks association did not organize with a paid-up capital of $20,000. (2) That said association did not convey the real estate required to be conveyed to the state by said act in the manner contemplated by the same, and did not convey said real estate to the state free from incumbrance. (3) That the said association failed to file a report to the governor within the time and of the character required by the act. (4) That it failed to pay $5,000 to exhibitors at said fair, as required by said act. (5) That it misappropriated about $2,000 of the money to be paid to exhibitors at said fair by paying said sum as purses for horse racing. (6) That it misappropriated about $5,000 of the money appropriated by the state for the erection of buildings, to the payment of a floating indebtedness of the Grand Forks association.

It will be observed that the relator's contentions necessitate a
construction of section 11 of the act, in connection with the
facts which are stipulated to be true; that is, it is stipulated that
there was a mortgage of $5,000 upon the land conveyed to the
state, and that the report was not made within the time prescribed
by the act, and that it did not contain all the matters required
to be stated therein by section 7 of the act. It is also stipulated
that no cash was paid into the treasury of the Grand Forks associa-
tion when it was organized, although it is contended by the
Grand Forks association that it was organized with a paid-up capital
of $20,000, the full equivalent of a money capital of that amount.
That these omissions and irregularities have forfeited all claim
to the appropriation by the Grand Forks association is the conten-
tion of the plaintiff. That these admitted omissions and irregu-
larities are not such as to warrant the paying of the appropriation
to the plaintiff is the answer of the Grand Forks association to
the contentions of the plaintiff. It will be seen that these omis-
sions and irregularities comprise two distinct matters or classes
of requirements provided for by the act: (1) Those to be done
by each association before the title is accepted by the state. (2)
Those to be done by each association from year to year after it
has held a fair. Whether a failure to comply with either or all of
these provisions by either association transfers the right to the
appropriation to the other association, as a matter of law, is the
precise question to be determined. This involves a construction
of section 11, above quoted. That the language of that section is
broad enough to technically include any of these omissions, we
might admit. Whether it is within the spirit and intent of the act
is a very different question.

In respect to the alleged omissions to comply with the law in
respect to matters preliminary to the conveyance of the land to
the state, we are satisfied that section 11 should have no applica-
tion. The governor and attorney general were made and con-
stituted by the act as the agents of the state to accept the title.
Sections 7 and 8 unequivocally clothe these officers with power
to accept the title to the land deeded to the state. The law does
not specify what that title shall be. That is left undisclosed.
There is no direction that it shall be unincumbered. The title was
to be conveyed to the state. It was conveyed to the state. The
acceptance was technically within the terms of the act. If it was

the legislative intention to demand an unincumbered title, it would have been stated. As it is, the officers did not accept the title tendered, in violation of the terms of the act so far as the mortgage was concerned. The same may be said of the contention as to the want of a paid-up capital in cash of $20,000. In the place of accepting cash for its stock, the association accepted land with improvements thereon and issued its stock to the stockholders in the corporation, which deeded the land to the Grand Forks State Fair Association. This was, as to final results, the same as though the association had sold its stock for cash, and with the cash purchased the land. We do not intend to intimate whether the state could have avoided the action of these two officers in a proper proceeding; but we deem it beyond dispute that the legislature did not intend that either association could avail itself of irregularities in matters preceding or pertaining to the acceptance of the title by these officers. The act as passed did not become effective at once. Certain matters of compliance with its provisions were required of each association before the act could become effective as to it. In accepting the deed, the act became effective as to each association by virtue of the action of the governor and attorney general. It would be an unreasonable construction to put upon the language used to say that either association, after acceptance by the state, through its delegated agents, can intervene and demand the appropriation, thereby completely setting aside and ignoring the action of such officers after the other association has acted in reliance upon the conclusiveness of the acceptance by the state of the title and organization tendered by it.

Section 11 was not intended to give either association the right to avail itself of the appropriation upon failure by the other to technically comply with all the provisions of the act in relation to matters preliminary to acceptance by the state. If either association had failed to become organized, or to deed the required number of acres of land, or to file a by-law under section 10, then the provisions of section 11 could be invoked by the other association as granting to it the right to the appropriation. In other words, if either association had failed to meet the requirements of the act as to fundamental matters, and could under no circumstances fulfill the essential conditions to acceptance, then the

other would be entitled to the appropriation. We deem this construction to be in accordance with the legislative intention. As to other matters required as preliminary to acceptance by the state, the action of the officers concluded the right of the other association to claim the appropriation. It is argued that the governor and attorney general had no power under the act to conclude the rights of either association to avail itself of failure of the other to technically comply with the provisions of the act. We think otherwise. They were constituted a tribunal to accept the title, and have done so, and we deem this binding upon the Fargo association in this case.

No cases in point have been cited, and we have failed to find any, after careful search. The situation is analogous to issuing certificates of final proof and patents by the Land Department of the United States. Mistakes of fact by this department cannot be taken advantage of by third persons seeking to secure the title to the land, although the government can do so. In Steel v. Smelting Co., 106 U. S. 447, 1 Sup. Ct. 389, 27 L. Ed. 226, it was said: "Necessarily, therefore, it [Land Department] must consider and pass upon the qualifications of the applicants, the acts he has performed to secure the title, the nature of the land, and whether it is of the class which is open to sale. Its judgment upon these matters is that of a special tribunal, and is unassailable except by direct proceedings for its annulment or limitation." See, also, Smelting Co. v. Kemp, 104 U. S. 636, 26 L. Ed. 875; Gale v. Best, 78 Cal. 235, 20 Pac. 550, 12 Am. St. Rep. 44.

The failure of the Grand Forks association to comply with statutory requirements as to making a report, and not paying to exhibitors the required amounts, and paying out money for alleged unwarranted purposes, and the failure to use the money strictly as contemplated by the act, are conditions subsequent to the organization. It is claimed by the plaintiff that the right to the appropriation was thereby forfeited, and that such forfeiture becomes self-executing under the terms of sections 11 of the act. We do not concur in this contention. We must look at the objects intended to be accomplished by the act. The legislature deemed it wise to provide for state fairs at two places, and provided for appropriations for such purpose, and it is not unreasonable to suppose that such appropriations were intended to continue permanently, although necessarily within the power and discretion of future legis-

latures to cease making such appropriation. These appropriations are to be used for state fair purposes for the welfare and progress of the agricultural interests of the whole state. If these appropriations are cut off, the benefit derived from appropriations that have been made will necessarily cease.

Can it be possible that the legislature intended that failure to comply with some or all of these conditions subsequent was to cut off the appropriation instanter as a matter of law, without a hearing by the association in default? Strictly speaking, the Grand Forks association is not a necessary party to this proceeding, and, if section 11 is to be construed as contended for by the plaintiff, the state auditor is legally bound to pay the appropriation to the association not in default, whenever default has been made by the other association in complying with these conditions as to the way in which the fairs shall be managed and the appropriations expended. Before so harsh a construction should be given to a statute, its language should be clear and unmistakable that such was the intention. A good-faith attempt to comply with these conditions subsequent is a good defense to a demand for the appropriation by the Fargo association. If the act is susceptible of a construction reasonably consistent with the purposes to be accomplished, such construction should be adopted in place of a harsh one that would lead to sacrifice of property, interests of the association in default, and detrimental to state interests.

These reports were called for in order to give the legislature information for its guidance in making future appropriations, and that it might act intelligently in legislating upon the subject. The report was made within time for the purpose intended, and, if it had not been, the state only can complain, as we deem the requirement simply directory as to the time fixed for making it. The same may be said of the alleged failure to pay fully $5,000 in premiums. Under the contention of the plaintiff, the payment of $4,900 in premiums would give it the right to the appropriation upon demand, and that would be true if section 11 gives it such right under the present showing, as that would necessarily follow if the strict wording of the section is to govern. It would be too strict a construction to hold that such technical omissions should inure to the benefit of the other association. Likewise, it must follow that the appropriation does not become forfeited if any portion of the money is expended for unwarranted purposes. We

do not think that such was the intention of the legislature. Whether the use of a portion of the appropriation for purses for horse racing was illegal we need not determine. It is sufficient to say that the plaintiff association cannot avail itself of the failure to strictly comply with the provisions of the act as to the management of the fair or the expenditure of the state money. That is a matter for the state through legislative action. The legislature of 1907 made no change in the law in reference to these fairs, and continued the appropriation of the same as previously made. It is presumable that it did so with full information as to the manner in which the money was expended. The same may be said of all other irregularities in complying with the provisions of the act that are in the nature of conditions subsequent to the organization. Section 11 does not clearly apply to them. We do not think that the language of that section should be construed to defeat the obvious objects of the law at the sacrifice of property rights. Before this should be done, the language of the act should be clear in favor of such a construction.

Whether mandamus is a proper remedy in this case we do not determine, as the defendants have not properly raised any question thereon.

The writ is denied.

FISK, J., concurs.

SPALDING, J. I concur in the conclusions, but not in all the reasons given therefor by my associates.